(165 App. Div. 561)

## In re PETRIE.

### .Appeal of ONEIDA STEEL PULLEY CO. et al.

(Supreme Court, Appellate Division, Third Department.   January 6, 1915.)

MASTER AND SERVANT (§ 250¾ New, vol. 16 Key-No. Series)—INJURY TO SERV-
ANT—COMPENSATION—STATUTORY PROVISIONS.

   Under Laws 1914, c. 41, § 15, subd. 3, providing that the loss of the
first phalange of the thumb or finger shall be equal to the loss of one-
half of the thumb or finger, and compensation shall be one-half of the
amount specified for the loss of thumb or finger, an injury to a finger,
necessitating the amputation of about one-third of the bone of the distal
phalange, and interfering with the usefulness of the finger in a material
way, causes loss of the first phalange and loss of half the finger, entitling
an award of compensation of half the amount specified for the loss of a
finger.

   Smith, P. J., and Kellogg, J., dissenting.

Appeal from Award of Workmen's Compensation Commission.

Proceedings before the Workmen's Compensation Commission for
compensation to Thomas Petrie for injuries received while an em-
ployé of the Oneida Steel Pulley Company.   From an award by the
Commission, the employer and the Utica Mutual Compensation Insur-
ance Corporation, insurer, appeal.   Affirmed.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD,
and WOODWARD, JJ.

Merwin K. Hart, of Utica, for appellants.
James A. Parsons, Atty. Gen. (Valentine Taylor, Deputy Atty. Gen.,
of counsel), for respondent State Compensation Commission.
Jeremiah F. Connor, for respondent State Workmen's Compensa-
tion Commission.

WOODWARD, J.   Thomas Petrie was at work for the Oneida
Steel Pulley Company on the 10th day of July, 1914, and was engaged
in operating a punch press.   His fingers were caught between the punch
and die in such a manner that the second finger of the right hand had
to be amputated at the first joint.   The third finger was injured, so
that the Commission has found as a fact that in "the amputation of the
third finger about one-third of the bone of the distal phalange was
cut off."   The only question arising upon this appeal is whether this
injury to the third finger was such as to entitle the injured man to an
allowance of one-half the amount which is provided by the statute for
the loss of a finger.

Section 15 of chapter 41 of the Laws of 1914 provides that in the
case of a loss of the third finger the injured party shall be entitled to
66⅔ per centum of the average weekly wages for a period of 25 weeks
(subdivision 3), and that "the loss of the first phalange of the thumb
or finger shall be considered to be equal to the loss of one-half of such
thumb or finger, and compensation shall be one-half of the amount
above specified."   The commissioners, finding the fact as above stated,
have allowed the injured man one-half of the 25 weeks as for the loss
of one-half of the finger, and the appellants urge that, as only a part

of the first phalange was removed, the commissioners erred in awarding for the loss of one-half the finger.

It seems to us that this is taking a limited view of the statute, and one not justified by its remedial character. If the statute had simply provided that in case of the loss of a third of the finger the compensation should be limited to 25 weeks, the fair construction would have been that the loss of the use of the finger was intended, and that any injury which destroyed the substantial use of the finger would entitle the injured person to the compensation. The statute sought, however, to limit this liability, realizing that every injury permanent in its nature did not operate to destroy the full usefulness of the finger, and so it was provided that the "loss of the first phalange of the thumb or finger shall be considered to be equal to the loss of one-half of such thumb or finger, and compensation shall be one-half of the amount specified." Without this clause there would have been no other specific provision for the loss of a portion of the finger. There would need to have been a practically complete loss of the use of the finger, or there would have been no fixed method of computation, which would present a situation entirely out of harmony with the general spirit of the act, which sought to make as far as possible a provision for absolutely fixing a just rate of compensation, without resort to complicated investigations involving delay and expense.

To get the true spirit of the act, we have only to read the "phalange" clause in full, where, after providing that the loss of the first phalange shall "be considered to be equal to the loss of one-half of such thumb or finger," it continues: "The loss of more than one phalange shall be considered as the loss of the entire thumb or finger," etc. That is, the loss of any part of the second phalange, however slight or immaterial, shall be construed as a loss of the entire finger; and yet we are asked to hold that in the case of the first phalange the destruction must be entire to warrant a holding that this constitutes a loss of one-half of the finger. Obviously the taking of one-half of the second phalange of a finger would not result in the relative loss that the taking of the first half of the first phalange would. After the first phalange is gone, what remains of the second, be it greater or less, is comparatively unimportant, yet the statute clearly and unmistakably provides that, where the loss involves "more than one phalange," the loss of the whole finger shall be held to have resulted. This, it seems to us, is a legislative construction upon the clause here under consideration. The substantial injury of the first phalange, requiring amputation, is to be understood as involving the loss of one-half of the finger, and, if the injury extends beyond the first phalange, then it is to be construed as involving the entire finger. No intelligent reason, we believe, can be suggested why the Legislature should provide that the loss of any part of the second phalange should result in an award for the full value of the finger, while a like substantial injury to the first phalange should not carry an award for one-half of the finger, where the statute has attempted to provide the standard by which the compensation should be awarded, and has provided for an award in the case of one-half the loss of the finger, in connection with a provision for an award for the full loss.

The act in effect provides that where the first phalange is lost this shall be construed as the loss of one-half the finger, and if the second phalange (or "more than one phalange") is lost this shall constitute the whole finger, for the purposes of the act. One phalange is the loss of half a finger; more than this is the loss of the other half, and, under the maxim that "like reason doth make like law" (Broom's Legal Maxims [8th Ed.] 153; Coke upon Littleton 1 a), it is clear that the Legislature, in providing a detailed schedule, including a clause for each finger, intended to exclude all other provisions for compensating for this character of losses, and to fix the reasonable rules for determining the extent of the compensation. Indeed, the statute itself provides that the "compensation for the foregoing specific injuries shall be in lieu of all other compensation," and the specific provisions for fingers, toes, etc., must, under the maxim "expressio unius est exclusio alterius," be deemed to exclude these injuries from the contemplation of the further provision contained in the last paragraph of subdivision 3 of section 15 of the act. "While this maxim will not be permitted to defeat the obvious legislative intent, where it conflicts with the letter of a statute, such intent must, nevertheless, be discernible in the context of the statute itself" (Aultman & Taylor Co. v. Syme, 163 N. Y. 54, 57, 57 N. E. 168, 169 [79 Am. St. Rep. 565]); and where it is in harmony with the letter and the spirit of the act it is controlling. There being, therefore, no other provision of the statute for dealing with the specific losses mentioned in subdivision 3 of section 15, and as it cannot be presumed that the Legislature intended to preclude all recovery where less than the first phalange was lost, it must follow that the intelligent construction of the language here under consideration requires that the determination made by the commissioners should be confirmed and approved.

Of course, a mere pinching of the finger, which does not result in a permanent injury, is not to be construed as the loss of half a finger. No compensation is awarded for the first two weeks, except the necessary medical treatment, as provided in section 13 of the act, and it is only in "case of disability *partial in character but permanent in quality*" (section 15, subd. 3) that the compensation is to be paid; but where there is a substantial and permanent injury to the first phalange—an injury involving the removal of a portion of the bone and interfering with the usefulness of the finger in a material way, such as is disclosed on this appeal—such an injury is in law a loss of the first phalange, and therefore a loss of half the finger.

The award of the Workmen's Compensation Commission should be affirmed, with costs. All concur (HOWARD, J., in result) except SMITH, P. J., and KELLOGG, J., dissenting, each in a memorandum.

SMITH, P. J. (dissenting). I am not prepared to hold that an accident which scrapes off one-tenth of the distal phalange as matter of law causes the loss of that phalange. With the statutes of many states before it when this act was passed, the Legislature has provided a certain compensation for the loss of a phalange, and not for the loss of part of a phalange. Notwithstanding the limitation in the statute, under that part of the section which treats of the "loss of use," it

seems to me a fair interpretation of the statute must give to a claimant compensation as for the loss of a distal phalange under a finding by the Commission that an injury thereto did cause the substantial loss of the use of that phalange. But there is no such finding in the case at bar, and we are called upon to decide whether the loss of a very small part of a phalange as matter of law constitutes the loss of that phalange, where there is other provision in the statute for compensation in cases not specifically provided for.

I vote for a reversal of the determination and the remission of the case to the Commission, for their determination of the question of fact as to whether in the case at bar the loss of a portion of the distal phalange has caused the substantial loss of the use of the whole thereof.

JOHN M. KELLOGG, J. (dissenting). The statute fixes the compensation for particular losses, and then provides that in all other cases of this class of disability the compensation shall be 66⅔ per centum of the difference between the average weekly wage and the wage-earning capacity thereafter in the same employment, or otherwise, payable during the continuance of such partial disability, etc. The question here, therefore, is not whether there is a compensation for the loss of one-third of the first phalange of the finger, but relates to the particular compensation for the loss. If the first phalange is lost, the compensation is fixed; if a lesser injury occurs to the finger, the compensation depends upon the loss of earning power. The Legislature has fixed the compensation for the first phalange—not for any part of the first phalange. This means a substantial loss of that phalange. Here the loss is one-third. If the loss of one-third of the phalange comes within the schedule, perhaps the loss of one-sixth or one-tenth would also be within it. If that was the intention, the Legislature could easily have said "for the loss of the first phalange, or any part thereof," or "any substantial part thereof."

I therefore think the claimant is entitled to compensation, not for the loss of a phalange, as fixed by the schedule, but under the provision relating to "other cases," which entitles him to be compensated according to the loss of earning power.