Mary Dowdell ("the employee") was injured in the line and scope of her employment with Vermont American Corporation ("the employer") when the tip of her right index finger was severed after it was caught in the tip of a malfunctioning machine. The employee sued the employer, seeking benefits under the Workers' Compensation Act ("the Act"). The employer and the employee each filed a summary-judgment motion; the employer contended that the employee was entitled to an award under the Act consistent with a 20% loss to an index finger (approximately $1,892), whereas the employee contended that she was entitled to an award consistent with a loss of half of an index finger (approximately $4,730). The trial court entered a *Page 37 
summary judgment in favor of the employer, declaring that the employee was entitled to benefits consistent with the employer's theory; that court later denied the employee's motion to alter, amend, or vacate that judgment, although it taxed costs to the employer and awarded a 15% attorney fee to the employee. The employee appeals. We affirm.
This case involves the interplay among portions of § 25-5-57(a)(3), Ala. Code 1975, a portion of the Act setting forth a schedule of compensation for permanent partial disability. Under subdivision a. of that subsection, compensation to an injured employee is equal to 66 2/3% of that employee's average weekly earnings for a particular number of weeks, which number corresponds to a particular member that is listed in the schedule. For the loss of an entire index finger, the schedule mandates an award of 43 weeks' worth of benefits. See §25-5-57(a)(3)a.2., Ala. Code 1975. The Act treats the "loss of use" of a finger or any other member as equivalent to the "loss" of that member.See § 25-5-57(a)(3)d.
The Act also provides that the loss of the first phalange (i.e., phalanx) of any finger "shall be considered as equal to the loss of one half" of the finger, and compensation is to be paid at the prescribed rate "during one half of the time specified." Ala. Code 1975, §25-5-57(a)(3)a.6. The loss of two or more phalanges is considered the same, under the Act, as the loss of an entire finger. Ala. Code 1975, § 25-5-57(a)(3)a.7.
Finally, the Act contains the following catchall provision that applies to injuries limited to a particular member:
 "For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in the schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for a total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss."
Ala. Code 1975, § 25-5-57(a)(3)d.
Phalanges are not themselves treated as scheduled members under the Act, but are merely components of a member (i.e., a finger) that is
scheduled. Thus, if a particular first phalanx is not "lost," the catchall provision mandates an award based upon the number of weeks of compensation that represents the proportion that the extent of the partial injury to the finger bears to a total loss of the finger. SeeLoggins v. Mallory Capacitor, Inc., 344 So.2d 522 (Ala.Civ.App. 1977) (affirming award of 40% permanent partial disability to leg based upon fractured ankle, where disability was confined to leg below the knee). Consequently, unless the employee in this case can be said to have lost (or lost the use of) her first phalanx under the Act, which would trigger a statutory award of 21.5 weeks of benefits under § 25-5-57(a)(3)a.6., the employee is entitled only to benefits for that fraction of 43 weeks that corresponds to the fraction of the finger that the employee lost (or lost the use of).
The record reveals[1] that the employee suffered her injury on February 24, 2000. On the following day and on February 28, she was examined by Dr. J. Garth Stauffer at the Hughston Clinic; Dr. Stauffer diagnosed the employee with a *Page 38 
right-index-finger amputation. A tracing prepared by Dr. Stauffer based upon X-rays taken during the earlier visit and notes accompanying that tracing indicate that the employee's right index finger was severed one centimeter below the tip, just above the bottom of her fingernail, leaving part of her nail and one-half of her first phalanx attached; that record indicates that the employee "does have adequate soft tissue coverage over the bone tip." After a followup visit on May 30, 2000, Dr. Stauffer discharged the employee from his care, without work restrictions, and determined that she was at maximum medical improvement. The record of that visit states, in pertinent part (emphasis added):
 "HISTORY: . . . In light of the fact that [the employee] has full function, no specific exquisite or debilitating tenderness to the tip and full intact grip and strength, it is advised that she not have reconstructive surgery. [The employee] acknowledges that even though [the finger] is squared off and does not look right and has a nub of a nail that she does have good function. In the long run, she would rather not have surgery and leave well enough alone.
". . . .
 "IMPAIRMENT: According to the AMA Guide Evaluation of Permanent Impairment Fourth Edition, page 3/30 20% of the digit amputated at the mid portion of the distal phalanx."[2]
In denying the employee's postjudgment motion, the trial court relied upon one of the first cases decided after the 1919 enactment of the Act,Ex parte Puritan Baking Co., 208 Ala. 373, 94 So. 347 (1922). In PuritanBaking, the Alabama Supreme Court affirmed a judgment for an injured employee, reasoning that the employee, having suffered the amputation of the entire first phalanx and a "very substantial portion"[3] of the second (i.e., middle) phalanx of his index and second fingers, resulting in the permanent stiffening of those fingers, "had in practical effect lost . . . the second phalanges of [those] fingers" and was entitled to an award of benefits based upon the loss of two whole fingers. Then, as now, the Act provided that the loss of two phalanges of a finger would be considered the equivalent of the loss of an entire finger. Although the injury suffered by the employee in Puritan Baking was more severe, which involved consideration of whether two phalanges, not just one phalanx, had been lost in that case, the legal analysis of the Supreme Court is instructive here.
Counsel for the employer in Puritan Baking urged the Supreme Court to follow a line of cases decided by lower courts in New York denying
recovery for a complete loss of a phalanx where not all of the phalanx was amputated, whereas the employee urged reliance upon an earlier decision of New York's highest court allowing recovery for a complete loss of a phalanx where more than half of the phalanx was amputated. The Alabama Supreme Court declined to choose either line of authority, per se:
 "[W]e do not think the instant case rests upon a determination as to the exact fractional portion of the phalange necessary to be removed to constitute the loss *Page 39 
of a phalange of the finger within the meaning of our Statute.
 "In Pater v. Superior Steel Co., 263 Pa. 244, 106 [A.] 202 [(1919)], it was held by the Supreme Court of Pennsylvania that the loss of the use of an arm with or without amputation resulting from injuries sustained by a workman, should be the equivalent of the actual loss of the arm. . . .
 ". . . [I]n quite a number of the New York decisions above cited stress was laid upon the fact there had been no proof of a permanent loss or impairment of the use of joint or of the injured phalange in those cases in which compensation was denied. And in Maxwell's Case, 119 Me. 504, 111 [A.] 849 [(1921)], the opinion points out that the plaintiff could so bend the injured finger at the distal joint and had such use thereof that it could not be held that he had lost the phalange of that finger within the meaning of the statute of that state."
208 Ala. at 375, 94 So. at 349. The Puritan Baking court continued:
 "In the subdivision of the statute which we now have under consideration is found the following language:
 "`In all cases the permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation in and by said schedule shall be in lieu of all other compensations.'
 "While this language may not be directly applicable to the situation here presented, . . . it is serviceable as pointing the way to the legislative intent.
 "Upon first consideration of the case of In re Petrie, [165 A.D. 561, 151 N.Y.S. 307, aff'd, 215 N Y 335, 109 N.E. 549 (1915)], by the Supreme Court of New York, the presiding judge in his dissenting opinion stated that a fair interpretation of the statute would give to the complainant compensation as for the loss of the distal phalange under a finding that the injury thereto would cause the substantial loss of the use of that phalange. Such is in effect the finding of the trial court in the instant case, as we construe the language used."
208 Ala. at 375, 94 So. at 349 (emphasis added). A "contrary" conclusion, explained the court, "would be out of harmony with sound reasoning and unsupported by the authorities generally." Id. Thus, under Alabama law, compensation for the loss of only part of a phalanx may be awarded as if the entire phalanx had been lost where the remaining part of that phalanx is, for all practical purposes, not usable.
Applying the principles espoused by the Alabama Supreme Court inPuritan Baking to the undisputed facts here, we conclude that the trial court properly concluded that the employee was not due to receive 21.5 weeks of benefits, the amount payable for the loss of an entire phalanx of her index finger. Although the employee suffered the amputation of approximately one-half of her first phalanx and part of her fingernail, an injury affecting a portion of the index finger's first phalanx that might reasonably be considered "substantial," the employee's medical records indicate that she has adequate soft tissue coverage of the tip of the remaining portion of the phalanx, full intact grip and strength, no extreme pain, and full function of the remaining portion of her finger. Under these circumstances, it cannot reasonably be concluded that the employee's first phalanx was "lost." The trial court therefore did not err in determining, as a matter of law, that the employee was entitled to benefits pursuant to the catchall provision of the Act's *Page 40 
schedule (i.e., for 20% of 43 weeks), rather than to the scheduled benefit (i.e., 21.5 weeks) for the loss of a first phalanx.
Having reviewed the facts and the pertinent legal authorities, we conclude that the summary judgment in favor of the employer is due to be affirmed.
AFFIRMED.
Yates, P.J., and Crawley, Thompson, and Pittman, JJ., concur.
[1] In considering the correctness of the summary judgment, we review the evidence in a light most favorable to the employee, the nonmovant.See Rich v. Warren Mfg., Inc., 634 So.2d 1015, 1016 (Ala.Civ.App. 1994).
[2] We note that the employee has not challenged, on appeal, the trial court's impairment assessment of 20% to the finger, but only that court's decision not to award benefits for the loss of half of a finger based upon what she contends was the loss of a whole first phalanx.
[3] The trial court in Puritan Baking described the loss as "less than half" of the phalanx. 208 Ala. at 373, 94 So. at 347.