Vernon Ramer ("the worker") was employed as a log-skidder operator by Swift Lumber, Inc. ("the company"). On April 28, 2000, the worker was injured when the skidder he was operating lurched forward and the seat dislodged, causing his right knee to strike a metal plate under the dashboard of the skidder. The worker was sent to Dr. Jonathen Yoder; Dr. Yoder referred the worker to Dr. Gilbert Holland. Dr. Holland ordered an MRI of the worker's knee. The MRI results revealed that the worker had a torn medial meniscus and torn anterior cruciate ligament ("ACL"). The MRI report also indicated that the worker had a torn medial collateral ligament ("MCL") and that the tear was "without associated edema consistent with subacute or chronic injury." Dr. Holland surgically repaired the worker's ACL on October 18, 2000.
The worker continued to have problems with his knee, so he chose to seek further treatment; he selected Dr. William Crotwell from a panel of four physicians selected by the company. See Ala. Code 1975, §25-5-77(a). Dr. Crotwell treated the worker for his torn MCL with conservative therapy; when the worker did not improve, Dr. Crotwell performed surgery on March 15, 2001. The worker reached maximum medical improvement ("MMI") on September 10, 2001. Dr. Crotwell assigned the worker a 25% physical-impairment rating to the right lower extremity and a 10% impairment rating to the body as a whole.
After a trial at which the worker and Elbert Glenn Brown, the company's compliance manager, testified, the trial court entered a judgment awarding the worker benefits of $256.57 per week for 200 weeks and awarding the worker's attorney $7,697.10 as an attorney fee. The company appeals, arguing that the trial court's judgment is not supported by substantial evidence of medical causation; that the trial court erred by awarding the worker 200 weeks of benefits for the loss of use of his leg when the uncontroverted medical evidence established that the worker had only a 25% impairment to his leg; that the trial court erred by awarding an amount of weekly compensation exceeding the statutory maximum of $220; and that the trial court erred in failing to deduct the attorney fee from the benefits awarded to the worker. The worker cross-appeals; he argues that the trial court erred by not determining that his injury, though to a scheduled member, should not be limited to compensation under the schedule because, he argues, pain and arthritis caused by the injury extends beyond his knee to his hip and lower back.
Our review of this case is governed by the Workers' Compensation Act, Ala. Code 1975, § 25-5-1 et seq., which states in pertinent part: "In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence." Ala. Code 1975, § 25-5-81(e)(2). Therefore, this court "will view the facts in the light most favorable to the findings of the trial court."Whitsett v. BAMSI, Inc., 652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Ex parte Trinity Indus., Inc., 680 So.2d 262,269 (Ala. 1996). Further, a trial court's finding of fact is supported by substantial evidence if it is "supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'" Exparte Trinity Indus., 680 So.2d at 269 (quoting West v. Founders LifeAssurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989), and Ala. Code 1975, § 12-21-12(d)). Our review of legal issues is without a presumption *Page 1203 
of correctness. Ala. Code 1975, § 25-5-81(e)(1); see alsoEx parte Trinity Indus., 680 So.2d at 268.
The company's first argument is that the worker failed to present substantial evidence of medical causation because, it argues, the worker presented no evidence establishing that his injuries were caused by his work-related accident. The company points out that Dr. Crotwell could not rule out whether the worker's MCL tear was in fact an old injury that preexisted the work-related accident. Although the company concedes that medical causation can, in appropriate instances, be proven by lay testimony, see Ex parte Price, 555 So.2d 1060, 1062 (Ala. 1989) (holding that a trial court was permitted to fix a worker's physical-disability rating at a percentage greater than the percentage assigned by the worker's physician), the company argues that the worker's testimony similarly fails to connect his injuries to his work-related accident.
According to the company, the MRI report indicated that the tear to the MCL was old. As noted above, the MRI report stated that the tear was "without associated edema consistent with subacute or chronic injury." That phrase, says the company, indicates that the tear was not caused by the worker's knee striking the dashboard of the skidder but, instead, preexisted the work-related accident. Dr. Crotwell's deposition testimony, which was presented as an exhibit at trial, indicates that he reviewed the MRI and the MRI report during his treatment of the worker. When questioned about whether, based upon his review of the actual MRI, he believed the MCL tear was old, Dr. Crotwell explained that he did not think one could tell if the tear was old or new from the MRI, just that a tear existed. He also testified that edema was not always present with such an injury. The company points out that Dr. Crotwell answered in the negative when questioned about whether he could, to a reasonable degree of medical certainty, rule out whether the worker had an old or preexisting injury to the MCL.
In addition, the company argues that the worker never testified that his current problems, including pain and swelling in his right knee and pain through his right leg, right hip, and lower back, were linked to his work-related accident. The company points out that the worker testified that his problems were caused by arthritis. Neither the worker nor Dr. Crotwell testified directly that the arthritis the worker suffered was a result of the work-related accident.
However, a reading of the worker's testimony reveals that the worker testified that he had not suffered any knee problems or any of the pain he described in his leg and hip before the work-related injury. He answered, in response to the question whether his arthritis pain was related to the workplace injury, "Yeah. Because there wasn't nothing wrong with me before I got hurt." Dr. Crotwell did testify that the MCL tear was consistent with an accident like that in which the worker was injured; he assigned the worker an impairment rating based on the worker's ACL tear, MCL tear, and the arthritis in his knee.
Our supreme court has explained that:
 "[L]ay testimony may combine with medical testimony to supply th[e] requisite proof [of medical causation]; and that the medical testimony, when viewed in light of lay evidence, may amply support the medical causation element without the expert witness's employing any requisite language. It is in the overall substance and effect of the whole of the evidence, when viewed in the full context *Page 1204 
of all the lay and expert evidence, and not in the witness's use of any magical words or phrases, that the test finds its application."
Ex parte Price, 555 So.2d at 1063. Viewing the evidence in the light most favorable to the trial court's judgment, see Whitsett v. BAMSI, Inc.,652 So.2d 287, 290 (Ala.Civ.App. 1994), overruled on other grounds, Exparte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala. 1996), we cannot disagree with the trial court's determination that the worker's knee injury, including the MCL tear and the arthritis, was caused by the worker's work-related accident. The MCL tear, according to Dr. Crotwell, was consistent with the type of accident the worker reported to him, as was the worker's continued disability despite the surgeries and physical therapy. The worker testified that he had not suffered any problems with his knee or leg prior to the work-related accident.
Although we have determined that the trial court's determination that the worker was entitled to benefits is supported by substantial evidence, we must reverse the award based upon the other arguments raised by the company. The judgment awarding the worker benefits for the total loss of use of his leg is not supported by substantial evidence; moreover, the trial court's award exceeds the statutory cap, and the trial court erroneously failed to properly compute and deduct from the worker's benefits the lump-sum attorney fee.
As the company argues, the trial court's award of 200 weeks of benefits corresponds to the compensation awardable for the loss or loss of use of a leg. However, Dr. Crotwell assigned a 25% impairment rating to the worker's right lower extremity and indicated that although the worker was restricted from excessive walking or standing, lifting more than 25 pounds, and excessive kneeling, squatting, twisting, turning, or torquing of his knee the worker was capable of working within those restrictions. Dr. Crotwell never testified that the worker had lost the entire use of his right leg.
The company correctly argues that an injury to a member that results in less than a total loss of use of the member is compensated "at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss." Ala. Code 1975, § 25-5-57(a)(3)d. Thus, according to the company, the worker would not be entitled to 200 weeks of benefits, the amount of benefits awarded for the loss of or the loss of use of the entire leg pursuant to § 25-5-5(a)(3)a.16, but would only be entitled to 25% of 200 weeks, the amount corresponding to the percentage of loss of use of the leg suffered by the worker. See Dowdell, 808 So.2d at 39-40 (affirming an award of 20% of the 43 weeks of benefits the schedule provided for the loss of an entire finger when the worker only lost, according to the trial court, 20% of the finger); Loggins v. Mallory Capacitor Co.,344 So.2d 522 (Ala.Civ.App. 1977) (holding that a 40% impairment to the left leg entitled a worker to 70 weeks of benefits (at the time, the loss of a leg entitled a worker to 175 weeks of benefits)).
As the worker points out, a trial court is not necessarily bound by the impairment rating assigned by a worker's doctor. Compass Bank v.Glidewell, 685 So.2d 739, 741 (Ala.Civ.App. 1996). In Glidewell, this court affirmed a trial court's assignment of a 34% impairment rating as opposed to a 22% impairment rating assigned by the worker's doctor; in doing so, we held that a trial court, in determining a worker's physical-disability rating, is not bound by *Page 1205 
the impairment rating assigned by the worker's doctor. Glidewell, 685 So.2d at 741. The trial court inGlidewell explained in its judgment that it had observed the worker and had determined, based on that observation, that the worker had suffered a greater impairment than 22%. Id. In discussing its determination, the trial court in Glidewell noted that it was prohibited from considering vocational — disability testimony pursuant to Ala. Code 1975, § 25-5-57(i), because the worker had returned to work at the same or at a greater wage than he had earned before the injury. Id. We affirmed the trial court's determination, stating that it was the trial court's duty to determine the extent of a worker's disability and that the trial court was permitted to consider all the evidence and its own observations in making that determination, provided that the trial court did not consider evidence of vocational disability when determining the worker's physical-impairment rating. Id.
We conclude, however, that the evidence in this record is simply insufficient to support a conclusion that the worker has lost the use of his entire leg. The worker did testify that he suffers pain in his right knee, right leg, right hip, back, and left leg, and that he also has numbness in his right hand, presumably from his use of a cane. However, the worker did not say that he was unable to use his right leg; nor did he describe his pain as debilitating or testify that, because of his pain, he was unable to perform basic life activities or hobbies he once enjoyed. Likewise, Dr. Crotwell's deposition testimony did not indicate that the worker's injury had effectively rendered the worker's entire leg useless. See Dowdell v. Vermont American Corp., 808 So.2d 36, 39
(Ala.Civ.App. 2001) ("Thus, under Alabama law, compensation for the loss of only part of a phalanx may be awarded as if the entire phalanx had been lost where the remaining part of that phalanx is, for all practical purposes, not usable."); see also Ex parte Puritan Baking Co., 208 Ala. 373,94 So. 347 (1922).
In addition, unlike the well-explained judgment in Glidewell, the judgment in the present case does not assign the worker any physical-impairment rating, does not mention the physical-impairment rating assigned by Dr. Crotwell, and does not indicate that observation of the worker had any impact on the determination of the physical-impairment rating. Instead, the judgment focuses on what the trial court perceived to be the difficulty the worker will face in seeking vocational retraining. The judgment states that the worker is illiterate, can only write his name, cannot perform arithmetic, and has only a grammar-school education. It concludes that "based on the court's findings of fact, the court finds that the [worker] is entitled to recover from the [company] for workers' compensation benefits." The company argues that these statements indicate that the trial court considered vocational disability in determining the worker's physical-impairment rating, which is not an appropriate consideration in cases involving injuries to a scheduled member. See Ex parte DrummondCo., 837 So.2d 831, 834-35 n. 8 (Ala. 2002) (overruling those cases cited in note 8 that had held evidence of vocational disability permitted an injury to be compensated outside the schedule). If the trial court did allow the worker's vocational disability to affect its determination of the worker's physical-disability rating, the trial court erred.
The trial court's award of 200 weeks of benefits is not supported by substantial evidence. Dr. Crotwell assigned a 25% physical-impairment rating to the worker's right lower extremity. None of the testimony offered by the worker was sufficient to serve as a basis for a 100% physical-impairment *Page 1206 
rating. The trial court's judgment made no mention of a physical-impairment rating, and the court appeared to focus on the worker's vocational disability, which is not a permissible consideration in a case involving an injury to a scheduled member. Thus, we conclude that the trial court's award of 200 weeks of benefits to the worker must be reversed. On remand, the trial court is instructed to award benefits based upon the percentage of loss of use of the right leg the worker's injury has caused.
The company also argues that the trial court erred in awarding an amount of compensation that exceeds the statutory maximum of $220 per week. See Ala. Code 1975, § 25-5-68(a). Section 25-5-57(a)(3)f. clearly states that the compensation for the loss or loss of use of a scheduled member is subject to the statutory cap on weekly benefits as enumerated in § 25-5-68(a). The trial court awarded the worker $256.57 in weekly benefits. That amount is in excess of the statutory maximum and is in error. On remand, the trial court is instructed to make an award not to exceed the statutory maximum.
Finally, the company challenges the trial court's award of a $7,697.10 attorney fee to the worker's attorney. As the company correctly explains, the trial court was required to reduce the worker's award to its present value, compute the 15% attorney fee, reduce the award by that fee, and then recompute the weekly amount due the worker. See Ex parteSt. Regis Corp., 535 So.2d 160, 162 (Ala. 1988). The trial court failed to properly compute the worker's attorney fee. Therefore, on remand, the trial court is instructed to recompute the attorney fee based on the principles set out in Ex parte St. Regis Corp..
The worker cross-appeals, arguing that the trial court erred by determining that his injury did not extend to other parts of his body and, therefore, determining that it should not be compensated outside the schedule. He bases this argument on his testimony at trial that he suffers pain in other parts of his body. Our supreme court indicated recently that an injury involving debilitating pain may, in some circumstances, be a basis for compensating that injury outside of the schedule. See Ex parte Drummond Co., 837 So.2d at 836 n. 11. However, as we noted above, the testimony involving the worker's pain was vague and undeveloped. The worker did not testify that the pain was debilitating, that it interfered with his daily activities, or that, despite medication, he continued to suffer severe pain. We do not read note 11 inEx parte Drummond Co. as being a basis for this court to determine that the pain described by the worker in this case as accompanying his injury is alone sufficient to permit compensation outside the schedule. In fact, our supreme court in Ex parte Drummond Co. overruled cases that awarded compensation outside the schedule for "pain, swelling, and discoloration." Id. at 834-35 n. 5 (overruling A.M.R. Servs. v.Butler, 697 So.2d 472 (Ala.Civ.App. 1997); Gold Kist, Inc. v. Casey,495 So.2d 1129 (Ala.Civ.App. 1986); Republic Steel Corp. v. Kimbrell,370 So.2d 294 (Ala.Civ.App. 1979); and Richardson Homes Corp. v.Shelton, 336 So.2d 1367 (Ala.Civ.App. 1976)). Accordingly, we affirm the trial court's determination that the worker's injury was to a scheduled member and did not extend to other parts of his body.
APPEAL — AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
CROSS-APPEAL — AFFIRMED.
YATES, P.J., and THOMPSON, PITTMAN, and MURDOCK, JJ., concur. *Page 1207