BRYAN, Judge.
General Electric Company appeals from a judgment awarding workers’ compensation benefits to Mary Ann Baggett, as the surviving dependent spouse of Charles Baggett. We affirm.
In August 2003, Mr. Baggett sued his employer, General Electric, seeking workers’ compensation benefits for injuries to his left ankle and left knee suffered in April 2001. Following a trial, the trial court entered an amended judgment determining that Mr. Baggett was permanently and totally disabled as a result of his work-related left-leg injury.
General Electric appealed the judgment to this court. See General Elec. Co. v. Baggett, 1 So.3d 1015 (Ala.Civ.App.2007) (“General Electric”). On April 24, 2007, while the appeal was pending, Mr. Baggett died. It is undisputed that Mr. Baggett’s work-related injury did not proximately cause his death.
In the initial appeal, General Electric argued, among other things, that the trial court had erred by treating Mr. Baggett’s left-leg injury as an injury to the body as a whole, rather than as an injury to a scheduled member under § 25-5-57(a)(3), Ala. Code 1975. Id. at 1017. This court agreed, concluding that the trial court had erred in awarding compensation for Mr. Baggett’s injury outside the compensation schedule established in § 25-5-57(a)(3). Accordingly, on May 11, 2007, we reversed the trial court’s judgment and remanded the case. Id. at 1020.
Following the release of this court’s opinion in General Electric, Mrs. Baggett was substituted as a party in place of Mr. Baggett. On remand to the trial court, Mrs. Baggett argued that she is entitled to compensation benefits pursuant to § 25-5-57(a)(5), Ala.Code 1975, which permits a deceased employee’s surviving spouse or dependent children to recover benefits due the employee under certain conditions. *710 General Electric, however, argued that Mrs. Baggett is not entitled to compensation benefits under § 25 — 5—57(a)(5). On November 26, 2008, the trial court, relying on its findings of fact made in its previous judgment of December 2005, entered a judgment determining that Mr. Baggett had sustained the total loss of the use of his left leg, a scheduled injury under § 25-5 — 57(a)(3), Ala.Code 1975. Therefore, the trial court awarded benefits to Mrs. Bag-gett for that injury for the period between May 15, 2004, and April 24, 2007, the date of Mr. Baggett’s death. The trial court also awarded Mrs. Baggett unpaid temporary-total-disability benefits that had accrued to Mr. Baggett. General Electric appealed.
Section 25-5-81(e), Ala.Code 1975, provides the standard of review in workers’ compensation cases:
“(1) In reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness.
“(2) In reviewing pure findings of fact, the finding of the circuit court shall not be reversed if that finding is supported by substantial evidence.”
Substantial evidence is “ ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ ” Ex parte Trinity Indus., Inc., 680 So.2d 262, 268 (Ala.1996) (quoting West v. Founders Life Assurance Co. of Florida,, 547 So.2d 870, 871 (Ala.1989)).
On appeal, General Electric argues that the trial court erred in awarding Mrs. Baggett compensation benefits pursuant to § 25 — 5—57(a)(5), Ala.Code 1975. General Electric bases its argument on its interpretation of the use of the phrase “ascertained by the court” in that section. Section 25 — 5—57(a)(5) provides, in pertinent part:
“If an employee who sustains a permanent partial or permanent total disability, the degree of which has been agreed upon by the parties or has been ascertained by the court, and death results not proximately therefrom, the employee’s surviving spouse or dependent children or both shall be entitled to the balance of the payments which would have been due and payable to the worker, whether or not the decedent employee was receiving compensation for permanent total disability, not exceeding, however, the amount that would have been due the surviving spouse or dependent children or both if death had resulted proximately from an injury on account of which compensation is being paid to an employee.”
(Emphasis added.) It is undisputed that the parties have never agreed upon the degree of Mr. Baggett’s disability. Regarding whether the degree of disability was ascertained by the trial court, General Electric argues that, when this court reversed the trial court’s December 2005 judgment and remanded the case in General Electric, the degree of Mr. Baggett’s disability ceased to have been “ascertained” by the trial court at that point. Therefore, General Electric argues, Mrs. Baggett is not entitled to compensation benefits under § 25-5-57(a)(5).
Under § 25-5-57(a)(5),
“[w]hen the amount of disability benefits due the worker has been established, if the worker then dies from a cause unre *711 lated to the work-related injury, his spouse and dependents are entitled to the benefits that would have been due to the worker. ‘Essentially, the spouse steps into the shoes of the worker, to continue receiving the benefits owed.’ ”
Drummond Co. v. Lolley, 786 So.2d 509, 512 (Ala.Civ.App.2000) (quoting Chatham Steel Corp. v. Shadinger, 768 So.2d 969 (Ala.Civ.App.1999), reversed on other grounds, Ex parte State Dep’t of Indus. Relations, 848 So.2d 251 (Ala.2002)).
If an employee dies from causes unrelated to the work-related injury before a judgment is entered determining the employee’s degree of disability, the employee’s surviving spouse or dependent children will not be entitled to compensation benefits under § 25-5-57(a)(5). Owens v. Ward, 49 Ala.App. 293, 271 So.2d 251 (Civ.App.1972). In Vann Express, Inc. v. Phillips, 539 So.2d 296 (Ala.Civ.App.1988), this court considered, in the context of § 25-5-57(a)(5), the effect of an employee’s death after a judgment had been entered determining the degree of disability but before the completion of the appeal process. In Vann Express, the trial court entered a judgment finding the employee to be totally and permanently disabled as a result of an injury caused by a work-related accident. 539 So.2d at 296-97. Following the entry of the judgment, the employee died from cancer, which was unrelated to the work injury. The employer subsequently appealed, arguing (1) that the trial court had erred by not addressing the employee’s cancer; (2) that the cancer was an “infirmity” as referred to in § 25-5-58, Ala.Code 1975, and, consequently, that the employee’s compensation should have been reduced; and (3) that the employee’s degree of disability had not been “ascertained by the court” and, consequently, that the employee’s surviving spouse and dependent children were not entitled to benefits under § 25-5-57(a)(5). Id. at 297. Regarding the employer’s argument concerning § 25-5-57(a)(5), this court stated:
“[The employer] maintains that [the phrase] ‘has been ascertained by the court’ means a final and nonappealable judgment or a judgment that has survived the appeals process must exist before a surviving spouse and/or dependent children may recover under section 25-5-57(a)(5).
“We disagree and choose to resolve this issue first. In the case of Harris v. Kimerling Truck & Parts Co., 504 So.2d 304 (Ala.Civ.App.1986), we discussed section 25-5-57(a)(5) and found that it ‘provides for payment to a spouse or dependent children only in the event the degree of disability has been agreed upon or judicially ascertained.’ However, we have never had occasion to define the phrase ‘judicially ascertained.’
“In interpreting a portion of the workers’] compensation statutes, we recognize:
“ ‘The Workers’] Compensation Act should be given a liberal construction to accomplish its beneficent purposes, and all reasonable doubts must be resolved in favor of the employee.’
“American Tennis Courts, Inc. v. Hinton, 378 So.2d 235 (Ala.Civ.App.1979) (citation omitted).
“Recognizing the aforementioned ‘beneficent purposes’ of workers’] compensation laws, we find the phrase ‘judicially ascertained’ to require that a court of competent jurisdiction consider the matter and then enter a final order setting forth the extent of the injured employee’s disability.
“We find that this particular statutory language reflects legislative intent to insure that disability determinations not be made following an employee’s death. We cannot agree with [the employer]’s *712 position that section 25-5-57(a)(5) requires that a judgment be entered and that said judgment be taken through the appeals process before the disability can be considered ‘judicially ascertained.’
“[The employerj’s position would compromise the ‘beneficent purposes’ of the Workers’] Compensation Act. On the other hand, our interpretation would be more in keeping with this basic statutory goal.
“It is a settled rule of statutory construction that when attaching one meaning to a term as opposed to another we may properly examine the opposing outcomes for guidance in selecting the right interpretation. State v. Calumet & Hecla Consolidated Copper Co., 259 Ala. 225, 66 So.2d 726 (1953).
“Having engaged in this type of analysis, we find that our interpretation of the term ‘judicially ascertained’ produces the workable and fair result. Accordingly, we find that [the employee’s] spouse and/or dependent children are entitled to his disability benefits subject to the other restrictions of section 25-5-57(a)(5).”
Vann Express, 539 So.2d at 297-98.
The court in Vann Express then determined that the trial court had not erred in failing to address the employee’s cancer in its judgment and by not reducing the employee’s compensation due to his cancer. Id. at 298. Therefore, the employee’s surviving spouse and dependent children were entitled to the compensation that had been awarded to the employee in the trial court’s judgment.
Vann Express indicates that, if a trial court has entered a judgment determining the degree of disability before an employee’s death, the employee’s subsequent death from causes unrelated to the disability does not preclude the employee’s surviving spouse or dependent children from recovering benefits that would have been due the employee after an appeal. When Mr. Baggett died on April 24, 2007, the degree of his disability had been determined by the trial court, which had found him to be permanently and totally disabled in its December 2005 judgment. Accordingly, under § 25-5~57(a)(5), Mrs. Baggett “stepped into the shoes” of Mr. Baggett at that point and became entitled to receive whatever compensation Mr. Baggett would have received, pending the appeal. See Lolley, 786 So.2d at 512; and Vann Express, 539 So.2d at 297-98. On appeal, this court reversed the trial court’s judgment, concluding that Mr. Baggett’s injury should have been treated as a scheduled injury and, consequently, that the trial court had erred in awarding permanent-total-disability benefits. On remand, the trial court found that Mr. Baggett had lost the use of his left leg, a scheduled injury under § 25-5-57(a)(3), and it awarded benefits to Mrs. Baggett accordingly. In so doing, the trial court merely awarded to Mrs. Baggett the benefits that Mr. Bag-gett “would have been due,” § 25-5-57(a)(5), had he survived. Section 25-5-57(a)(5) does not preclude Mrs. Baggett from recovery in this case.
The requirement that an employee’s degree of disability be “ascertained by the court” in order for the employee’s surviving spouse and dependent children to recover benefits is surely intended to minimize problems of proving, after an employee’s death, the extent of disability. See generally Cole v. State Workmen’s Comp. Comm’r, 166 W.Va. 294, 273 S.E.2d 586 (1980) (canvassing the law regarding dependents’ rights to derivative workers’ compensation benefits in cases involving an employee’s death). In this case, we emphasize that an extensive record concerning the extent of Mr. Bag-gett’s injury was made before his death. *713 As will be discussed below, the record made before Mr. Baggett’s death supports the trial court’s finding regarding the extent of his left-leg injury. This case does not present the problem of proof that § 25-5-57(a)(5) was designed to prevent.[1]
General Electric also argues that, upon remand, the trial court erred in finding that Mr. Baggett had sustained the total loss of use of his left leg, a scheduled member under § 25-5-57(a)(3)a.l6., Ala. Code 1975. Section 25-5-57(a)(3)a. prescribes that compensation to an injured employee shall be equal to 66 2/3% of that employee’s average weekly earnings for a particular number of weeks, which corresponds to a particular member listed in the schedule. The “permanent and total loss of the use of a member” is considered the equivalent to the loss of that member. § 25-5-57(a)(3)d. An injury to a member that results in less than a total loss or total loss of use of the member is compensated “at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss.” § 25-5-57(a)(3)d.
The trial court, in determining the degree of the loss of use of an employee’s scheduled member, “is not bound by ... expert testimony and is free to make its own observations and determine the extent of disability.” B E & K Constr. Co. v. Hayes, 666 So.2d 1, 2 (Ala.Civ.App.1995). “[I]t is the duty of the trial court, which has the opportunity in an ore tenus proceeding, to observe the witnesses and their demeanor, and not the appellate court, to weigh the evidence presented.” Smith v. QHG of Dothan, Inc., 872 So.2d 197, 202 (Ala.Civ.App.2003). An employee’s “vocational disability ... is not an appropriate consideration in cases involving injuries to a scheduled member.” Swift Lumber, Inc. v. Ramer, 875 So.2d 1200, 1205 (Ala.Civ.App.2003).
In Dowdell v. Vermont American Corp., 808 So.2d 36 (Ala.Civ.App.2001), this court considered whether an employee who lost approximately one-half of the first phalanx of her index finger lost the use of her entire phalanx. This court stated: “[U]n-der Alabama law, compensation for the loss of only part of a phalanx may be awarded as if the entire phalanx had been lost where the remaining part of that phalanx is, for all practical pwtposes, not usable.” 808 So.2d at 39 (emphasis added). In Ex parte Puritan Baking Co., 208 Ala. 373, 375, 94 So. 347, 349 (1922), our supreme court stated: “[I]f there had been an amputation of a substantial portion of a phalange resulting in the stiffening of the joint so as, for all practical purposes, to destroy the use of that phalange to the workman, then, within the meaning of the statute, he has lost the same.... ” (Emphasis added.) Thus, an injury to a scheduled member that renders that member, *714 “for all practical purposes,” useless constitutes the total loss of use of that member.
We find Pennsylvania’s workers’ compensation law to be instructive regarding what constitutes a loss of use for “all practical purposes.” Under Pennsylvania law, the test for determining whether an injury to a scheduled member constitutes the complete “loss” of that member is “whether the [employee] has suffered the permanent loss of use of the injured member for all practical intents and purposes.” Faulkner Cadillac v. Workers’ Comp. Appeal Bd. (Tinari), 831 A.2d 1248, 1254 (Pa.Commw.Ct.2003). Pennsylvania law provides for compensation for the loss of scheduled members regardless of whether the injury effects the injured employee’s earning capacity. Id. at 1252.
In United States Steel Corp. v. Workmen’s Compensation Appeal Board, 71 Pa. Commw. 354, 454 A.2d 1180 (1983), the appellate court affirmed an award of compensation for the loss of the use of an employee’s left leg.[2] The employee in United States Steel had chronic disabling synovitis of his left ankle. 71 Pa. Commw. at 355, 454 A.2d at 1181. The appellate court in that case described the extent of the employee’s left-leg injury:
“The [employee] testified that he is unable to sit or stand for any great length of time, that walking short distances results in pain, that he cannot lift even the slightest amount of weight or engage in any athletic activity and that he cannot bend or squat without pain.
“... [The employee’s physician] stated that the [employee] could not depend upon his leg for strength, could not walk more than a couple of blocks, could not climb the stairs for more than a very short time, and could not use his left leg to function in a normal fashion in any normal activities. We note that the [employee's own testimony supports the result reached by [the employee’s physician] in that the [employee] testified that he has trouble standing, sitting, bending, lifting, getting into and out of cars, climbing the stairs and doing almost ‘any activity at all.’ ”
71 Pa. Commw. at 356-57, 454 A.2d at 1180.
In Faulkner Cadillac, supra, the court noted that “ ‘the loss of use for all practical intents and purposes’ does not mean that an injured body part is of absolutely no use whatsoever.” 831 A.2d at 1254. In that case, the court affirmed an order finding that a chemical-burn injury to an employee’s hands constituted the total loss of use of the hands “for all intents and purposes.” Id. at 1255. The order was supported by evidence indicating the employee’s “inability to perform numerous routine tasks associated with the activities of daily living.” Id. In that case, the employee’s hands became numb and stiff after driving, he could not hold a cup a coffee or a cigarette, he was unable to turn the key to unlock his car door, he used Velcro so he did not have to tie his sneakers, and he used an oversized tube of toothpaste in order to brush his teeth. Id. at 1254.
Returning to our case, in General Electric this court discussed the nature of Mr. Baggett’s left-leg injury:
“Baggett fell at work while loading refrigerators onto a railroad car. As a result of the accident, Baggett fractured his left ankle and tore cartilage in his left knee.
*715 “In June 2001, Dr. Scott Sharp operated on Baggett’s left knee. Dr. Sharp determined that Baggett was able to return to work without restrictions on September 17, 2001. Baggett began to experience swelling of his left knee soon after returning to work. On September 21, 2001, Dr. Sharp gave Baggett a steroid injection in his left knee and again determined that Baggett was able to return to work. Although Baggett continued to work his regular job, he received assistance from his coworkers in performing his duties due to the pain in his left knee.
[[Image here]]
“In January 2003, Dr. John Higginbotham, an orthopedic surgeon, operated on Baggett’s left knee in an attempt to further repair the torn cartilage in that knee. Baggett testified that the condition of his left knee deteriorated after the January 2003 surgery. In February 2004, Dr. Higginbotham again operated on Baggett’s left knee. Dr. Higginbotham recommended that Bag-gett undergo a total joint replacement of the left knee. Dr. Higginbotham testified that a total joint replacement would reduce the pain in Baggett’s left knee to the point where he would not require continual pain medication. Dr. Higginbotham stated that Baggett reached maximum medical improvement on May 14, 2004.
“On March 16, 2005, Dr. Eric Beck performed a functional-capacities evaluation (‘FCE’) on Baggett. During the FCE, Baggett, using a 10-point scale, rated the current level of pain in his left knee as a 7. Baggett rated the average level of pain in that knee during the previous month as a 7 on a 10-point scale, with 7 being the lowest level of pain and 9 the highest level of pain he had experienced during that period. Dr. Beck assigned the following restrictions to Baggett: occasional lifting of up to 25 pounds and frequent lifting of up to 20 pounds, provided that such lifting takes place between the knuckle and the waist while standing; no more than one hour standing at a time; no more than 15 minutes walking at a time; no kneeling, crawling, or balancing; no working at unprotected heights or around moving machinery; and occasional squatting, crouching, and climbing. Pursuant to guidelines established by the American Medical Association (‘AMA’), Dr. Beck assigned an 8% impairment rating to Baggett’s whole body. Dr. Beck testified by deposition that he had assigned the 8% impairment rating according to specific AMA guidelines regarding the injuries to Baggett’s left knee and left ankle.
[[Image here]]
“Baggett testified at trial that he must use a walking cane ‘about 90% of the time’ and that he wears a knee brace on his left knee all day. Baggett testified that, because of the injuries to his left leg, he experiences pain when performing any activity other than ‘just sitting around.’ Baggett further testified that he is unable to squat and lift without experiencing pain.... Baggett testified that he uses only Celebrex, a prescription nonsteroidal, anti-inflammatory medication, to relieve pain; Baggett does not use narcotic medication to relieve pain. Baggett further testified that he soaks in a tub with alcohol and Epsom salts to relieve pain and swelling. ...”
1 So.3d at 1016-17.
In its November 2008 judgment, the trial court adopted the findings of facts made *716 in the December 2005 judgment.[3] In its December 2005 judgment, the trial court, which had the benefit of observing Mr. Baggett at trial, found these pertinent facts regarding the left-leg injury:
“[Mr. Baggett], who is obviously in pain and who has a severe limp, walks with a cane and a brace on his left leg. He has trouble, according to his testimony, lifting, standing and walking. He testified that he is unable to kneel, crawl, squat, climb, balance, stoop and bend. He states that he is unable to engage in his previous hobbies of playing with his grandchildren, running, and working. [Mr. Baggett] experiences pain on a daily basis.... His pain is made worse by kneeling, walking and movement. [Mr. Baggett] testified that the pain is made better by rest, medications and heat, but that his medical condition has not improved from physical therapy programs.
[[Image here]]
“All of the credible testimony before the Court is that [Mr. Baggett] was in fact severely injured on April 2, 2001, and that his medical status post-accident, including three surgeries and multiple therapy efforts, has been one of gradual and constant depreciation.... [Mr. Baggett] has difficulty performing normal daily tasks, can no longer perform basic life activities, and is unable to engage in his previous hobbies. [Mr. Baggett] has had three surgeries on his left knee, but continues to have pain and debilitation. His complaints of pain are significant and are credible to the Court.”
The record in this case contains substantial evidence indicating that Mr. Baggett lost the use of his left leg for all practical purposes. Similar to the employee in United States Steel, who “could not use his left leg to function in a normal fashion in any normal activities,” 71 Pa. Commw. at 356, 454 A.2d at 1181, Mr. Baggett, because of his injury, experienced “difficulty performing normal daily tasks.” The employee in Unites States Steel had trouble performing “almost ‘any activity at all’” due to the pain caused by his injury. 71 Pa. Commw. at 357, 454 A.2d at 1180. Similarly, Mr. Baggett was extremely limited in his activities because he experienced pain performing any activity other than “just sitting around.” Similar to the injured employee in Faulkner Cadillac, who was unable “to perform numerous routine tasks associated with the activities of daily living,” 831 A.2d at 1255, Mr. Baggett struggled to perform “basic life activities” and was “unable to engage in his previous hobbies.” The loss of the use of a scheduled member “does not mean that an injured body part is of absolutely no use whatsoever.” Faulkner Cadillac, 831 A.2d at 1254. Viewing the facts “in the light most favorable to the findings of the trial court,” as this court is required to do, Ex parte Professional Bus. Omiers Ass’n Workers’ Comp. Fund, 867 So.2d 1099, 1102 (Ala.2003), we conclude that the trial court did not err in determining that Mr. Baggett had sustained the total loss of use of his left leg under § 25-5-57(a)(3). *717 Accordingly, the trial court did not err in awarding Mrs. Baggett benefits for that injury.
Based on the foregoing, the judgment of the trial court is affirmed.
AFFIRMED.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and MOORE, J., concur in the result, without writings.

. General Electric does not argue that Mrs. Baggett is precluded from recovery under § 25-5-57(a)(5) by virtue of this court's construction, in Drummond Co. v. Boatman, 825 So.2d 823 (Ala.Civ.App.2001), of that section as it relates to § 25-5-60, Ala.Code 1975. See also Ex parte State Dep't of Indus. Relations, 848 So.2d 251 (Ala.2002), citing Boatman with approval. Therefore, we do not address that issue. See Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2003) (“An argument not made on appeal is abandoned or waived.”). Moreover, General Electric did not make such an argument to the trial court. See State Farm Mut. Auto. Ins. Co. v. Motley, 909 So.2d 806, 821 (Ala.2005) (“[An appellate court] cannot consider arguments advanced for the purpose of reversing the judgment of a trial court when those arguments were never presented to the trial court....”).

. Regarding factual issues, Pennsylvania law, like Alabama law, requires affirmance on appeal if substantial evidence supports the findings on which the judgment below is based. 71 Pa. Commw. at 355, 454 A.2d at 1181. See § 25-5-81(e)(2), Ala.Code 1975.

. In its November 2008 judgment, the trial court initially stated that it was adopting the conclusions of law and findings of fact of its December 2005 judgment. Some of the conclusions and supporting factual findings in the December 2005 judgment, of course, are inconsistent with this court's decision in General Electric reversing that judgment. We assume that the trial court, in adopting its conclusions and findings from the December 2005 judgment, obviously intended to adopt those conclusions and findings insofar as they do not conflict with General Electric. None of the trial court’s pertinent findings of fact from the December 2005 judgment discussed herein conflict with General Electric.