971 So.2d 722 (2007)
SHONEY'S, INC.
v.
Sachiko RIGSBY.
2041069.
Court of Civil Appeals of Alabama.
January 12, 2007.
Rehearing Denied April 6, 2007.
*723 Amy K. Myers and George R. Parker of Bradley Arant Rose & White, LLP, Birmingham, for appellant.
Gatewood A. Walden, Montgomery, for appellee.
MURDOCK, Judge.
Shoney's, Inc., appeals from a judgment of the Montgomery Circuit Court awarding workers' compensation benefits to Sachiko Rigsby for a permanent and total disability arising from carpal tunnel syndrome.
In January 2002, Rigsby filed this action seeking workers' compensation benefits. This case was tried ore tenus on May 10, 2004. On May 31, 2005, the trial court entered a judgment awarding Rigsby workers' compensation benefits for a permanent and total disability based on its findings that Rigsby suffered from carpal tunnel syndrome in both wrists and that her carpal tunnel syndrome was caused by her employment.
Shoney's filed a postjudgment motion under Rule 59(e), Ala. R. Civ. P. On August 17, 2005, the trial court entered an amended judgment that made detailed findings about the repetitive nature of many of Rigsby's job tasks and Rigsby's constant use of her hands at work. Regarding the testimony of Dr. Edward E. Palmer, Rigsby's treating orthopedic surgeon, the trial court stated:
"[Dr. Palmer] suspected [Rigsby] would have continued pain if she tries to do heavy manual-type work. He defined heavy manual-type work as `gripping, lifting type activity.' On cross-examination, when asked if there were doctors who hold to the opinion that repetitive motion is the cause of, or can be the cause of carpal tunnel syndrome, Dr. Palmer answered in the affirmative. Dr. Palmer also testified that Mrs. Rigsby was truthful about her complaints and about all other aspects of her problems, and he agreed that it is common for his patients who are suffering carpal tunnel syndrome to complain to him that some repetitive work or motion that they were doing caused their carpal tunnel syndrome.
". . . .
"The Court has observed Mrs. Rigsby during the trial of this cause, and has interrogated her, and finds her to be credible. . . . Accordingly, the Court finds this to be clear and convincing evidence that she suffered injuries to her left and right arms, wrist, hands, commonly referred to as carpal tunnel syndrome, and an injury to her left thumb called a trigger-finger. The Court further finds from the clear and convincing evidence that the proximate cause of these injuries was the repetitive type work Mrs. Rigsby performed as a kitchen worker for Shoney's over a period of twenty-nine and one-half years. The Court also takes note of the fact that Shoney's produced no evidence to refute Mrs. Rigsby's claim that she sustained the injuries that she claims to have sustained, nor has it produced any evidence to refute Mrs. Rigsby's claim that her injuries were proximately caused by the repetitive type work she did at Shoney's during her period of employment."
Shoney's filed a timely appeal, contending (1) that Rigsby's injury was a cumulative-physical-stress disorder and that she did not prove by clear and convincing evidence that her injury was caused by her employment, (2) that the trial court erred in awarding Rigsby permanent and total disability when her injury was solely to a scheduled member, her right hand and/or her right arm, and (3) that the trial court *724 erred in determining that Rigsby was totally disabled.
Rigsby was 54 years old at the time of the trial in 2004.[1] Rigsby worked for Shoney's from 1972 until April 2001 as a kitchen "prep" worker and, more recently, as a "kitchen manager." Most of Rigsby's job duties throughout her career required constant use of her hands, including cutting, chopping, peeling, cooking, washing pots, pans, and utensils, mopping, sweeping, and lifting sacks and boxes weighing as much as 50 pounds. Rigsby regularly worked between 55 and 60 hours per week.
In April 2000, Rigsby visited Dr. Palmer, complaining of pain and numbness in her hands and wrists. Dr. Palmer diagnosed Rigsby as having (1) "trigger thumb" that caused her left thumb to pop and lock up, (2) carpal tunnel syndrome in her right wrist, and (3) tendinitis in her left wrist. Dr. Palmer treated Rigsby with cortisone injections, which did not alleviate the pain in Rigsby's wrists.
In June 2000, Dr. Palmer performed a carpal-tunnel-release surgery on Rigsby's right wrist. In July 2000, Rigsby reported to Dr. Palmer that her condition had much improved and he released her to return to work without restriction. Rigsby returned to work at her job at Shoney's from July 2000 until April 2001. After Rigsby returned to work, she again complained of pain and numbness in her hands and wrists, and Rigsby quit work in April 2001 because of the pain in her hands and wrists. Rigsby has not worked since April 2001. Rigsby testified that she is able to do some housework, to drive on occasion, and to shop for groceries, but her hands hurt if she does too much. Rigsby takes pain medication because of the pain in her hands and wrists.
We first address Shoney's argument regarding the sufficiency of the evidence. Rigsby's condition is a "cumulative physical stress disorder." Consequently, the trial court's judgment in her favor had to be based upon evidence that the trial court could and did find to clearly and convincingly establish medical causation. Section 25-5-81(c) provides:
"(c) Evidence. The decision of the court shall be based on a preponderance of the evidence as contained in the record of the hearing, except in cases involving injuries which have resulted from gradual deterioration or cumulative physical stress disorders, which shall be deemed compensable only upon a finding of clear and convincing proof that those injuries arose out of and in the course of the employee's employment.
"For the purposes of this amendatory act, `clear and convincing' shall mean evidence that, when weighted against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
(Emphasis added.)
We also are mindful that "[t]his court is precluded from weighing the evidence presented before the trial court" and that "[w]e merely examine the record to determine if the conclusion of the trial court is reasonably supported by the evidence." Fryfogle v. Springhill Mem'l Hosp., Inc., 742 So.2d 1255, 1258 (Ala.Civ. *725 App.1998), aff'd, 742 So.2d 1258 (Ala.1999). We have carefully examined the evidence presented in the present case, including the testimony of Rigsby, the testimony of Dr. Palmer, and the medical records. We cannot conclude as a matter of law that that evidence, particularly given the dearth of evidence in opposition, was insufficient to support the trial court's finding of causation. The trial court's judgment is therefore not due to be reversed on this ground.
We turn now to Shoney's second argument. Shoney's contends, and we agree, that the trial court erred in treating Rigsby's injury as an unscheduled injury to the body as a whole, rather than as a scheduled injury under § 25-5-57(a)(3), Ala.Code 1975. Although Shoney's argues that Rigsby's injury was only to her right hand and wrist, the trial court found that Rigsby had suffered injuries to "her left and right arms, wrist, hands." Subsections 25-5-57(a)(3)a.12, -a.13, -a.15, -a.24, -a.25, and -a.28, Ala.Code 1975, prescribe the compensation to be awarded for various losses relating to hands and arms. Section 25-5-57(a)(3)d., Ala.Code 1975, governs the loss of use of a scheduled member and provides:
"The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein. For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss."
In Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), our Supreme Court restated the test for determining when an injury to a scheduled member should result in an award of compensation beyond the scheduled amount. The Supreme Court held:
"We renew our commitment to the policy that underlay the Bell[ v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968),] test and that is recognized in the current edition of 4 Lex K. Larson, Larson's Workers' Compensation Law § 87.02 (2001):
"`The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.'
". . . . [W]e today adopt the language recited above from Larson, Workers' Compensation Law § 87.02 as the test for determining whether an injury to a scheduled member should be treated as unscheduled. . . . "
Ex parte Drummond Co., 837 So.2d at 834-35.[2]
*726 In Masterbrand Cabinets, Inc. v. Johnson, [Ms. 2030409, June 3, 2005] ___ So.2d ___ (Ala.Civ.App.2005), this court applied Ex parte Drummond Co. to affirm a trial court's judgment finding an employee to be permanently and totally disabled as a result of "swelling and constant, throbbing pain in her hands and arms that often reached a level of 8 on a scale of 10." Masterbrand Cabinets, ___ So.2d at ___. This court explained:
"[T]he Drummond Court did not have before it a case that required it to address an abnormal or unusual pain that, although isolated to a scheduled member, caused a more general, debilitating effect on the body as a whole. The ongoing pain experienced by the worker in Ex parte Drummond was not unusually severe; nor was it constant. Furthermore, it was pain that largely was precipitated by the worker's use, or overuse, of the scheduled member. In *727 such a case, the worker, by refraining from the use of that member, may largely avoid the pain in question with the result being that the worker is in no worse a position due to his inability to use the affected member than if the member had been completely lost.
". . . .
"Clearly, pain isolated to a scheduled member might be sufficiently constant and severe, even when the worker refrains from using the scheduled member, that it would cause a debilitating effect to the body as a whole that is greater than the disability resulting from the loss of, or the loss of use of, that scheduled member as contemplated by § 25-5-57(a)(3). The Legislature undoubtedly assumed that there could be ongoing pain associated with the loss of or a permanent injury to a scheduled member. The question becomes whether the pain associated with a lost member, or with a permanently injured member even when the worker avoids the use of that member to the extent he or she reasonably can do so, . . . extends to other parts of the body and interferes with their efficiency or[, in other words,] is sufficiently abnormal in its frequency or continuity and in its severity that it has a debilitating effect on the body as a whole [greater than that contemplated by § 25-5-57(a)(3)]."[3]
Masterbrand Cabinets, ___ So.2d at ___ (footnotes omitted). See also Stone & Webster Constr., Inc. v. Lanier, 914 So.2d 869, 877 (Ala.Civ.App.2005) (discussing Masterbrand Cabinets, Inc. v. Ruggs, 891 So.2d 869 (Ala.Civ.App.2004)).
In contrast to the record in Masterbrand Cabinets, Inc. v. Johnson, the record in the present case does not reveal substantial evidence indicating that pain from Rigsby's injuries "extends to other parts of [her] body and interferes with their efficiency" so as to warrant a recovery of benefits outside the schedule. The trial court found that Rigsby used her prescription pain medication two times per week on average. Moreover, as in Masterbrand Cabinets, Inc. v. Johnson, the evidence indicates that Rigsby's pain is "largely . . . precipitated by [her] use, or overuse, of the scheduled member," ___ So.2d at ___, and there is not substantial evidence from which the trial court could find to the contrary. "In such a case, the worker, by refraining from the use of that member, may largely avoid the pain in question with the result being that the worker is in no worse a position due to his inability to use the affected member than if the member had been completely lost." Masterbrand Cabinets, Inc. v. Johnson, ___ So.2d at ___ (footnote omitted).
Based on the foregoing, we conclude that the trial court erred in awarding Rigsby benefits based on an injury to the body as a whole, rather than awarding benefits based on the loss of use of scheduled members as contemplated by § 25-5-57(a)(3). We therefore reverse the judgment and remand the cause for the trial court to enter a judgment that applies that statutory provision and that otherwise is in accordance with this opinion.
REVERSED AND REMANDED.
CRAWLEY, P.J., and THOMPSON, J., concur.
PITTMAN, J., concurs in the result, with writing.
BRYAN, J., concurs in the result, without writing.
*728 PITTMAN, Judge, concurring in the result.
I concur in the result. See Alabama Workmen's Comp. Self-Insurers Guar. Ass'n v. Wilson, [Ms. 2040523, June 16, 2006] ___ So.2d ___ (Ala.Civ.App.2006), which I believe properly states the governing law in this area.
NOTES
[1] Rigsby was born in Japan and moved to the United States when she was 15 years old. Rigsby has the equivalent of a ninth-grade education; she has limited proficiency in the English language and poor reading skills.
[2] We take this opportunity to correct a mistaken assertion in Masterbrand Cabinets, Inc. v. Johnson, [Ms. 2030409, June 3, 2005] ___ So.2d ___ (Ala.Civ.App.2005) (plurality opinion). The opinion in Masterbrand Cabinets, which was written by the author of the present opinion, made note of the test established by the Supreme Court in the 1968 case of Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), namely:

"`"[A]lthough the injury itself is to only one part or member of the body, if [(1)] the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or [(2)] the injury causes an abnormal and unusual incapacity with respect to the member, then the employee is not limited in his recovery under the [Workers'] Compensation Law to the amount allowed under the schedule for injury to the one member."'"
Masterbrand Cabinets, ___ So.2d at ___ (quoting Ex parte Drummond Co., 837 So.2d 831, 833 (Ala.2002), quoting in turn Bell, 282 Ala. at 646, 213 So.2d at 811) (some emphasis omitted). After noting that our Supreme Court in Ex parte Drummond Co. had articulated the new test quoted in the text of this opinion, the opinion in Masterbrand Cabinets then continued by stating:
"We do not read Ex parte Drummond as foreclosing compensation outside the schedule when an injury, although to a scheduled member, entails `an abnormal and unusual incapacity with respect to the member'in particular, a debilitating painthat impairs the body as a whole in a manner not contemplated by the schedule."
Masterbrand Cabinets, ___ So.2d at ___ (emphasis added). To the extent the foregoing statement asserts that Ex parte Drummond Co. does not foreclose the employment of the so-called second prong of the Bell testthe allowance for compensation outside the schedule for "an abnormal and unusual incapacity with respect to the [scheduled] member"the opinion in Masterbrand Cabinets failed to adequately consider footnote 10 and the accompanying text of the Ex parte Drummond Co. opinion. (Likewise incorrect was the similar implication in the main opinion in Stone & Webster Construction, Inc. v. Lanier, 914 So.2d 869, 877 (Ala.Civ.App.2005).) As the Supreme Court stated in Ex parte Drummond Co., "we decline to consider the so-called second prong of the Bell test a part of the test that we adopt today." 837 So.2d at 835 n. 10.
On the other hand, to the extent the above-quoted statement from Masterbrand Cabinets asserts that Ex parte Drummond Co. does not foreclose the awarding of compensation outside the schedule "when an injury . . . to a scheduled member[] entails . . . a debilitating pain . . . that impairs the body as a whole in a manner not contemplated by the schedule," it is correct. The Ex parte Drummond Co. Court itself noted that its opinion did not foreclose such compensation:
"This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here."
837 So.2d at 836 n. 11. The test adopted in Ex parte Drummond Co. would indeed appear to admit of such compensation. See Masterbrand Cabinets, ___ So.2d at ___ n. 3 (Noting "[b]y way of example, [that] a worker could experience ongoing pain from an injured member that is so continuous and severe, even when the worker refrains from the use of that member, as to materially adversely affect the worker's ability to use his mind or to concentrate to the degree necessary to accurately or safely perform various tasks. In a real sense, the effect of such pain could properly be considered as `extend[ing] to other parts of the body and interfer[ing] with their efficiency.'"). Similarly, it is conceivable that a worker's pain could be of such frequency and severity as to adversely affect his or her ability to sleep, thereby resulting in a material deterioration of his mental or physical health, or both.
[3] The last-quoted sentence has been modified with the use of an ellipsis and bracketed phrases to avoid the suggestion of a test other than that articulated in Ex parte Drummond Co.