BRYAN, Judge.
 

 General Electric Company appeals a judgment of the trial court awarding workers’ compensation benefits to Charles Bag-
 
 *1016
 
 gett for a permanent and total disability. Because we conclude that the trial court erred by compensating Baggett for an injury to the body as a whole rather than for an injury to a scheduled member under § 25-5-57(a)(3), Ala.Code 1975, we reverse and remand.
 

 On August 29, 2003, Baggett sued his employer, General Electric, seeking workers’ compensation benefits for injuries to his left ankle and left knee suffered on April 2, 2001.
 
 [1]
 
 A trial was conducted on March 29-30, 2005. On October 21, 2005, the trial court entered a judgment finding Baggett to be permanently and totally disabled. Following a postjudgment motion, on December 5, 2005, the trial court entered an amended judgment finding Bag-gett to be permanently and totally disabled.
 

 Baggett was 58 years old at the time of the trial in 2005. Baggett worked for General Electric from 1971 to 2001 as a punch-press operator, a quality-control inspector, an assembly-line worker, a repairman, and a warehouse worker. Baggett fell at work while loading refrigerators onto a railroad car. As a result of the accident, Baggett fractured his left ankle and tore cartilage in his left knee.
 

 In June 2001, Dr. Scott Sharp operated on Baggett’s left knee. Dr. Sharp determined that Baggett was able to return to work without restrictions on September 17, 2001. Baggett began to experience swelling of his left knee soon after returning to work. On September 21, 2001, Dr. Sharp gave Baggett a steroid injection in his left knee and again determined that Baggett was able to return to work. Although Baggett continued to work his regular job, he received assistance from his coworkers in performing his duties due to the pain in his left knee.
 

 On December 1, 2001, Baggett obtained an early retirement from General Electric. Before his April 2001 accident, Baggett had planned, based on his age and years of service, to retire early from General Electric and subsequently to work as a truck driver for another employer.
 

 In January 2003, Dr. John Higginbotham, an orthopedic surgeon, operated on Baggett’s left knee in an attempt to further repair the torn cartilage in that knee. Baggett testified that the condition of his left knee deteriorated after the January 2003 surgery. In February 2004, Dr. Higginbotham again operated on Baggett’s left knee. Dr. Higginbotham recommended that Baggett undergo a total joint replacement of the left knee. Dr. Higginbotham testified that a total joint replacement would reduce the pain in Bag-gett’s left knee to the point where he would not require continual pain medication. Dr. Higginbotham stated that Baggett reached maximum medical improvement on May 14, 2004.
 

 On March 16, 2005, Dr. Eric Beck performed a functional-capacities evaluation (“FCE”) on Baggett. During the FCE, Baggett, using a 10-point scale, rated the current level of pain in his left knee as a 7. Baggett rated the average level of pain in that knee during the previous month as a 7 on a 10-point scale, with 7 being the lowest level of pain and 9 the highest level of pain he had experienced during that period. Dr. Beck assigned the following restrictions to Baggett: occasional lifting of up to 25 pounds and frequent lifting of up to 20 pounds, provided that such lifting takes place between the knuckle and the waist while standing; no more than one
 
 *1017
 
 hour standing at a time; no more than 15 minutes walking at a time; no kneeling, crawling, or balancing; no working at unprotected heights or around moving machinery; and occasional squatting, crouching, and climbing. Pursuant to guidelines established by the American Medical Association (“AMA”), Dr. Beck assigned an 8% impairment rating to Baggett’s whole body. Dr. Beck testified by deposition that he had assigned the 8% impairment rating according to specific AMA guidelines regarding the injuries to Baggett’s left knee and left ankle.
 

 John McKinney, a vocational expert, testified at trial for Baggett. McKinney opined that Baggett was 100% vocationally disabled as a result of his work-related injury. McKinney testified that he had based his determination of Baggett’s vocational disability upon the physical restrictions that Dr. Beck had given Baggett, Baggett’s age, the period of time Baggett had been out of the workforce, and Bag-gett’s need for a cane to walk. However, McKinney did not cite Baggett’s level of pain as a factor in determining his degree of vocational disability.
 

 Baggett testified at trial that he must use a walking cane “about 90% of the time” and that he wears a knee brace on his left knee all day. Baggett testified that, because of the injuries to his left leg, he experiences pain when performing any activity other than “just sitting around.” Baggett further testified that he is unable to squat and lift without experiencing pain. Baggett stated, in addition to experiencing pain in his left ankle and left knee, he has begun to experience pain in his right knee. However, during cross-examination, Bag-gett seem to testify that he does not experience any pain other than the pain in his left knee. Baggett testified that he uses only Celebrex, a prescription nonsteroidal, anti-inflammatory medication, to relieve pain; Baggett does not use narcotic medication to relieve pain. Baggett further testified that he soaks in a tub with alcohol and Epsom salts to relieve pain and swelling, but he did not indicate how frequently he does so.
 

 “In a workers’ compensation case, the Court of Civil Appeals reviews the ‘standard of proof ... and other legal issues without a presumption of correctness.’ § 25 — 5—81(e)(1), Ala.Code 1975. A trial court’s judgment in a workers’ compensation case based on pure findings of fact will not be reversed if it is supported by substantial evidence. § 25-5-81(e)(2), Ala.Code 1975. Substantial evidence is ‘evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’
 
 West v. Founders Life Assurance Co. of Florida,
 
 547 So.2d 870, 871 (Ala.1989).”
 

 Ex parte Professional Bus. Owners Ass’n Workers’ Comp. Fund,
 
 867 So.2d 1099, 1102 (Ala.2003).
 

 This court does not afford a presumption of correctness to the trial court’s application of the law to the facts.
 
 See
 
 § 25-5-81(e), Ala.Code 1975; and
 
 Ex parte Eastwood Foods, Inc.,
 
 575 So.2d 91, 93 (Ala.1991). “This court’s role is not to reweigh the evidence, but to affirm the judgment of the trial court if its findings are supported by substantial evidence and, if so, if the correct legal conclusions are drawn therefrom.”
 
 Bostrom Seating, Inc. v. Adderhold,
 
 852 So.2d 784, 794 (Ala.Civ.App.2002).
 

 On appeal, General Electric first argues that the trial court erred by treating Baggett’s left-leg injury as an injury to the body as a whole, rather than as an injury to a scheduled member. Section 25-5-57(a)(3), Ala.Code 1975, provides, in pertinent part:
 

 
 *1018
 
 “a. Amount and Duration of Compensation. For permanent partial disability, the compensation shall be based upon the extent of the disability. In cases included in the following schedule, the compensation shall be 66 2/3 percent of the average weekly earnings, during the number of weeks set out in the following schedule:
 

 [[Image here]]
 

 “16. For the loss of a leg, 200 weeks.”
 

 Section 25-5-57(a)(3)d., Ala.Code 1975, provides:
 

 “Loss of Use of Member. The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein. For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in this schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss.”
 

 In
 
 Ex parte Drummond Co.,
 
 837 So.2d 831 (Ala.2002), our supreme court restated the test for determining when an injury to a scheduled member should be treated as an injury to the body as a whole. Our supreme court stated:
 

 “We renew our commitment to the policy that underlay the
 
 Bell [v. Driskill,
 
 282 Ala. 640, 213 So.2d 806 (1968),] test and that is recognized in the current edition of 4 Lex K. Larson,
 
 Larson’s Workers’ Compensation Law
 
 § 87.02 (2001):
 

 “ ‘The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.’
 

 “... This language remains unchanged from the edition of the Larson treatise on which this Court relied in
 
 Bell.
 
 Because of the confusion that has developed surrounding the
 
 Bell
 
 test, we today adopt the language recited above from Larson,
 
 Workers’ Compensation Law
 
 § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled; therefore, we overrule
 
 Bell
 
 insofar as it established a different test....”
 

 837 So.2d at 834-35 (footnote omitted).
 

 In its judgment, the trial court in this case stated:
 

 “[Baggett] has an unscheduled injury even though his injury is to a scheduled member because the effects of his injury extend to more than his left knee and left ankle and involve other parts of the body, particularly his right knee, making it difficult for him to walk or do virtually anything, producing a greater and more prolonged incapacity than naturally results from an injury to a specific member. [Baggett] experiences pain on a daily basis and the pain is made worse by kneeling, walking, and movement. [Baggett] has difficulty performing normal daily tasks, can no longer perform basic life activities, and is unable to engage in his previous hobbies. [Baggett] has had three surgeries on his left knee, but continues to have pain and debilitation. His complaints of pain are significant and are credible to the Court. His chronic pain emanates from his on-the-job injury and he certainly meets the
 
 *1019
 
 test for being permanently and totally disabled under Alabama law.”
 

 The trial court found that Baggett, in addition to experiencing pain in his left knee, also experienced pain in his right knee, and this finding was supported by some evidence. However, any effects of the injury to Baggett’s left knee that may have extended to his right knee would not remove his injury from the schedule because the “loss” of two legs is itself a scheduled injury.
 
 See
 
 § 25-5-57(a)(3) a.26., AJa.Code 1975;
 
 Stone & Webster Constr., Inc. v. Lanier,
 
 914 So.2d 869, 876-78 (Ala.Civ.App.2005) (stating that the effects of an injury to an employee’s right knee upon his left knee did not remove the injury from the schedule because the loss of both legs is a scheduled injury); and
 
 Alabama Workmens’ Comp. Self-Insurers Guar. Ass’n, Inc. v. Wilson,
 
 993 So.2d 451, 455 (Ala.Civ.App.2006) (stating that any effects of an injury to an employee’s wrists upon his arms did not remove the injury from the schedule because the loss of both arms is itself a scheduled injury).
 

 Baggett contends that the effects of his left-leg injury extended to other, nonscheduled parts of his body. Baggett supports this contention by noting that Dr. Beck assigned an 8% impairment rating to Baggett’s body as a whole. However, Dr. Beck explained in his deposition that he had assigned the
 
 8%
 
 impairment rating according to specific AMA guidelines regarding the injuries to Baggett’s left knee and left ankle only.
 

 Baggett also cites the following portion of Dr. Beck’s testimony as evidence indicating that the effects of his left-leg injury extend to other parts of his body:
 

 “Q. ... Based upon the medical restrictions that you assigned to Mr. Bag-gett, those were to prevent Mr. Baggett from squatting to the floor, lifting heavy objects, climbing and that sort of thing, would you agree that the site of the injury to his knee and his ankle, that the injury affects what he may do with his body as a whole, with his function as a whole?
 

 [[Image here]]
 

 “A. Yes, I believe so.”
 

 Dr. Beck’s testimony indicates that the restrictions that he placed upon Baggett due to Baggett’s left-leg injury would apply to his entire body. The complete loss of the use of an employee’s leg would naturally limit his ability to lift, squat, crawl, or climb, and those limitations would necessarily be limitations on the function of the entire body. The fact that such limitations would apply to the entire body, as opposed to only the injured member, does not necessarily mean that, pursuant to the test stated in
 
 Ex parte Drummond Co., “ ‘
 
 “the effects of the loss of the member extend to other parts of the body and interfere with their efficiency.” ’ ” 837 So.2d at 834. We note that the supreme court in
 
 Ex parte Drummond Co.
 
 explicitly overruled
 
 Checkers Drive-In Restaurant v. Brock,
 
 603 So.2d 1066 (Ala.Civ.App. 1992), a case in which this court identified work restrictions significantly limiting an employee’s ability to stand as producing effects sufficient to take a foot injury off the schedule. 837 So.2d at 834 n. 6. In this case, the presence of restrictions applicable to the body as a whole does not remove the left-leg injury that caused those restrictions from the scope of scheduled compensation.
 

 Baggett also contends that certain testimony of his vocational expert, John McKinney, supports the trial court’s treating his injury as one to the whole body. McKinney testified that Baggett’s ability to lift, kneel, crawl, and balance depends upon numerous body parts other than his left leg. Based upon McKinney’s testimony, Baggett seems to argue that the re
 
 *1020
 
 strictions placed on him regarding lifting, kneeling, crawling, and balancing indicate that other parts of his body were affected by his left-leg injury. However, as noted, work restrictions that in some way touch upon the whole body do not necessarily mean that the injury will be treated as an injury to the whole body under
 
 Ex parte Drummond Co.
 
 Moreover, McKinney’s testimony that numerous body parts are required in order to perform certain functions like lifting, kneeling, and crawling would be true regardless of whether Bag-gett’s left leg was injured. McKinney’s testimony is not substantial evidence indicating that the effects of Baggett’s left-leg injury extended to other parts of his body.
 

 Baggett contends that his left-leg injury extends to other parts of his body because he often relies on a cane to walk, cannot squat and lift without pain, cannot stand for long periods, cannot walk for long distances, cannot crawl, has trouble balancing, and does not climb. However, these effects are consistent with the loss of the use of a leg and do not necessarily indicate that the left-leg injury extends to other parts of the body. This evidence cited by Baggett is not substantial evidence indicating that the effects of his left-leg injury extended to other parts of his body, pursuant to
 
 Ex parte Drummond Co.
 

 Baggett also maintains that the trial court correctly treated his left-leg injury as an injury to the body as a whole because, he says, that injury causes him debilitating pain. In
 
 Ex parte Drummond Co.,
 
 our supreme court, in dicta, indicated that debilitating pain isolated to a injured scheduled member may, in some circumstances, be a basis for compensating an injury outside of the schedule.
 
 See
 
 837 So.2d at 836 n. 11. However, the record does not contain substantial evidence indicating that Baggett experiences debilitating pain that, by itself, causes a disability to the body as a whole. The record does not indicate that Baggett experiences more severe pain from his left-leg injury than would normally be associated with an injury of this nature, an injury listed in the schedule. Moreover, we note that our supreme court in
 
 Ex parte Drummond Co.
 
 overruled cases that awarded compensation outside the schedule for “pain, swelling, and discoloration.” 837 So.2d at 834-35 & n. 5 (overruling
 
 A.M.R. Servs. v. Butler,
 
 697 So.2d 472 (Ala.Civ.App.1997);
 
 Gold Kist, Inc. v. Casey,
 
 495 So.2d 1129 (Ala.Civ.App.1986);
 
 Republic Steel Corp. v. Kimbrell,
 
 370 So.2d 294 (Ala.Civ.App. 1979); and
 
 Richardson Homes Corp. v. Shelton,
 
 336 So.2d 1367 (Ala.Civ.App. 1976)).
 
 See also Swift Lumber, Inc. v. Ramer,
 
 875 So.2d 1200, 1206 (Ala.Civ.App. 2003).
 

 Therefore, we conclude that the trial court erred in awarding compensation for Baggett’s injury outside the compensation schedule established in § 25-5-57(a)(3). Accordingly, we reverse the judgment of the trial court and remand the case. This holding pretermits discussion of the other issues raised by General Electric.
 

 REVERSED AND REMANDED.
 

 THOMPSON, P.J., and THOMAS, J., concur.
 

 MOORE, J., concurs in the result, without writing.
 

 PITTMAN, J., recuses himself.
 

 [1]
 

 . On appeal, the parties do not address the issue whether Baggett filed his claim within the applicable statute of limitations. Therefore, we express no opinion regarding that issue.