MURDOCK, Justice
(concurring specially).
I concur in quashing the writ. In so doing, I note my agreement with most of the analysis in the opinion of the Court of Civil Appeals but find it necessary to further explain my understanding of the law as it relates to the issue of pain resulting from injury to a “scheduled member.”
First, I specifically note my agreement with the conclusion of the Court of Civil Appeals that “any effects of the injury to [Charles] Baggett’s left knee that may have extended to his right knee would not remove his injury from the schedule because the ‘loss’ of two legs is itself a scheduled injury. See § 25-5-57(a)(3)a.26., Ala.Code 1975.” General Elec. Co. v. Baggett, 1 So.3d 1011, 1019 (Ala.Civ.App.2007). See also Ala.Code 1975, § 25-5-57(a)(3)d. (providing that the loss of use of a member is equivalent to the loss of that member and that permanent disability resulting from partial loss of use of a member is to be compensated on a pro rata basis in relation to the compensation payable for total loss of use under the schedule); Stone & Webster Constr., Inc. v. Lanier, 914 So.2d 869, 876-78 (Ala.Civ.App.2005) (stating that the effects of an injury to an employee’s right knee upon his left knee did not remove the injury from the schedule because the loss of both legs is a scheduled injury and “the ... loss of the use of a member [is] considered as equivalent to the loss of that member”).
Second, I believe the approach reflected in the Court of Civil Appeals’ opinion— determining first whether an injury is to be compensated as an injury to a scheduled member — is correct. Only if it can be determined that the injury is not compen-sable under the schedule prescribed in § 25-5-57(a)(3)a. does the court then proceed to consider the degree of disability to the body as a whole under § 25-5-57(a)(3) or whether the degree of disability is great enough to be deemed a “total” disability under § 25-5-57(a)(4). To first decide whether an injury qualifies an employee for total-disability benefits under § 25-5-57(a)(4) and, only if it is determined that it *1022 does not, then to proceed to consider application of the schedule would negate the intended operation of the schedule, with its specific treatment of certain types of injuries. It also would effectively unwind this Court’s holding in Ex parte Drummond Co., 837 So.2d 831 (Ala.2002), in which this Court reversed numerous decisions that had relied on a variety of factors, including work restrictions and vocational disabilities, to hold that injuries were compensa-ble outside the schedule. Ex parte Drummond Co., 837 So.2d at 834, nn. 6 & 8 and accompanying text.
In the present case, after determining that the injury was to a scheduled member, the Court of Civil Appeals turned its attention to the issue of Charles Baggett’s pain. Earlier in its opinion, the court had noted that, during a functional-capacities evaluation performed in March 2005, Bag-gett “rated the ... level of pain in his left knee as a 7” and “rated the average level of pain in [his left] knee during the previous month as a 7 on a 10-point scale, with 7 being the lowest level of pain and 9 the highest level of pain he had experienced during that period.” General Elec. Co., 1 So.3d at 1016. The Court of Civil Appeals also noted, however, that “Baggett testified that, because of the injuries to his left leg, he experiences pain when performing any activity other than ‘just sitting around.’ Baggett further testified that he is unable to squat and lift without experiencing pain.” 1 So.3d at 1017.
The legal analysis provided by the Court of Civil Appeals as to the issue of pain begins with the observation that Ex parte Drummond Co.
“indicated that debilitating pain isolated to a injured scheduled member may, in some circumstances, be a basis for compensating an injury outside of the schedule. See 837 So.2d at 836 n. 11. However, the record does not contain substantial evidence indicating that Bag-gett experiences debilitating pain that, by itself, causes a disability to the body as a whole.”
General Elec. Co., 1 So.3d at 1020. As a preliminary matter, I do not believe this Court has ever said that the debilitating pain upon which compensation outside the schedule can be based must “by itself’ be the cause of disability to the body as a whole, i.e., that the court may not consider the combined effects of the injury to the scheduled member and the pain experienced by the employee. That said, I agree with the essential conclusion of the Court of Civil Appeals — that the record in this case does not contain substantial evidence that Baggett experiences debilitating pain that would make Baggett’s injury compen-sable beyond the scheduled amount.
The Court of Civil Appeals offers the following analysis in support of the aforesaid conclusion:
“The record does not indicate that Bag-gett experiences more severe pain from his left-leg injury than would normally be associated with an injury of this nature, an injury listed in the schedule. Moreover, we note that our supreme court in Ex parte Drummond Co. overruled cases that awarded compensation outside the schedule for ‘pain, swelling, and discoloration.’ ”
General Elec. Co., 1 So.3d at 1020 (citing Ex parte Drummond Co., 837 So.2d at 834-35 & n. 5, and referencing cases overruled by Ex parte Drummond Co.). Given the evidence of pain experienced by the employee in this case, however, my vote to quash the writ is based on the lack of a showing that the employee’s pain resulted from the use of the scheduled member that cannot reasonably be avoided. I believe the decision of the Court of Civil Appeals in Shoney’s, Inc. v. Rigsby, 971 So.2d 722 *1023 (Ala.Civ.App.2007), correctly states the applicable law:
“[T]o the extent ... Masterbrand Cabinets[, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App.2005) (plurality opinion),] asserts that Ex parte Drummond Co. does not foreclose the awarding of compensation outside the schedule “when an injury ... to a scheduled member[ ] entails ... a debilitating pain ... that impairs the body as a whole in a manner not contemplated by the schedule,’ it is correct. The Ex parte Drummond Co. Court itself noted that its opinion did not foreclose such compensation:
“ ‘This case does not present a situation in which the pain, although isolated to the scheduled member, causes a disability to the body as a whole. We recognize that pain can be totally, or virtually totally, debilitating, but this case does not present such a situation; therefore, we decline to address that situation here.’
“837 So.2d at 836 n. 11. The test adopted in Ex parte Drummond Co. would indeed appear to admit of such compensation. See Masterbrand Cabinets, 984 So.2d at 1145 n. 3 (Noting ‘[b]y way of example, [that] a worker could experience ongoing pain from an injured member that is so continuous and severe, even when the worker refrains from the use of that member, as to materially adversely affect the worker’s ability to use his mind or to concentrate to the degree necessary to accurately or safely perform various tasks. In a real sense, the effect of such pain could properly be considered as “extend[ingl to other parts of the body and interfering] with their efficiency. ” ’). Similarly, it is conceivable that a worker’s pain could be of such frequency and severity as to adversely affect his or her ability to sleep, thereby resulting in a material deterioration of his mental or physical health, or both.”
971 So.2d at 725 n. 2 (emphasis added). The opinion of the Court of Civil Appeals continued:
“In Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136 (Ala.Civ.App. 2005), this court applied Ex parte Drummond Co. to affirm a trial court’s judgment finding an employee to be permanently and totally disabled as a result of ‘swelling and constant, throbbing pain in her hands and arms that often reached a level of 8 on a scale of 10.’ Masterbrand Cabinets, 984 So.2d at 1139. This court explained:
“‘[T]he Drummond Court did not have before it a case that required it to address an abnormal or unusual pain that, although isolated to a scheduled member, caused a more general, debilitating effect on the body as a whole. The ongoing pain experienced by the worker in Ex parte Drummond [Co.] was not unusually severe; nor was it constant. Furthermore, it was pain that largely was precipitated by the worker’s use, or overuse, of the scheduled member. In such a case, the worker, by refraining from the use of that member, may largely avoid the pain in question with the result being that the worker is in no worse a position due to his inability to use the affected member than if the member had been completely lost.
[[Image here]]
“ ‘Clearly, pain isolated to a scheduled member might be sufficiently constant and severe, even when the worker refrains from using the scheduled member, that it would cause a debilitating effect to the body as a whole that is greater than the disability resulting from the loss of, or the *1024 loss of use of, that scheduled member as contemplated by § 25 — 5—57(a)(3). The Legislature undoubtedly assumed that there could be ongoing pain associated with the loss of or a permanent injury to a scheduled member. The question becomes whether the pain associated with a lost member, or with a permanently injured member even when the worker avoids the use of that member to the extent he or she reasonably can do so, ... extends to other parts of the body and interferes with their efficiency or[, in other words,] is sufficiently abnormal in its frequency or continuity and in its severity that it has a debilitating effect on the body as a whole [greater than that contemplated by § 25-5-57(a)(3) ].’[1]
“Masterbrand Cabinets, 984 So.2d at 1144-1145 (footnotes omitted). See also Stone & Webster Constr., Inc. v. Lanier, 914 So.2d 869, 877 (Ala.Civ.App.2005) (discussing Masterbrand Cabinets, Inc. v. Ruggs, 891 So.2d 869 (Ala.Civ.App. 2004)).
“In contrast to the record in Masterbrand Cabinets, Inc. v. Johnson, the record in the present case does not reveal substantial evidence indicating that pain from Rigsby’s injuries ‘extends to other parts of [her] body and interferes with their efficiency’ so as to warrant a recovery of benefits outside the schedule. The trial court found that Rigsby used her prescription pain medication two times per week on average. Moreover, as in Masterbrand Cabinets, Inc. v. Johnson, the evidence indicates that Rigsby’s pain is ‘largely ... precipitated by [her] use, or overuse, of the scheduled member,’ 981 So.2d at 11¼, and there is not substantial evidence from which the trial court could find to the contrary. ‘In such a case, the worker, by refraining from the rose of that member, may largely avoid the pain in question with the result being that the worker is in no worse a position due to his inability to use the affected member than if the member had been completely lost. ’ Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d at 1144 (footnote omitted).”[2]
971 So.2d at 726-27 (footnote omitted and emphasis added).
Given the fact that § 25-5-57(a)(3)d. equates the loss of use of a scheduled member with the loss of that member, the showing that must be made is that the employee suffers pain of sufficient frequency or continuity, and of sufficient severity, that it interferes with the efficiency of other parts of the body and has a debilitating effect greater than that contemplated by the schedule “even when the [employee] avoids the use of [the scheduled] member to the extent he or she reasonably can do so” physically. Shoney’s, Inc., 971 So.2d at 727. Because the petition before us does not attempt to make such a showing, and because the record before us does *1025 not appear to support such a showing, I see no probability of merit in the petition. See Rule 39(f), Ala. R.App. P. I therefore concur in quashing the writ.

. As noted in Shoney's, Inc., the last-quoted sentence was modified in that case with the use of an ellipsis and bracketed phrases to avoid the suggestion of a test other than that articulated in Ex parte Drummond Co. Shoney's, Inc., 971 So.2d at 726 n. 3.

. I also note that the cases involving pain that were listed in note 5 and overruled in the accompanying text of Ex parte Drummond Co. “all involved pain associated with the use or overuse of a scheduled member that apparently could have been avoided by the worker’s nonuse of the member,” and that Ex parte Drummond Co. overruled "those cases only 'insofar as they expanded the Bell [v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968),] test.”' Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136, 1144 (Ala.Civ.App.2005) (citing Ex parte Drummond Co., 837 So.2d at 834-35).