PITTMAN, Judge.
Gold Kist, Inc. (“the employer”), appeals from a judgment of the Jefferson Circuit Court that, among other things, determined Denise Porter (“the employee”) to have suffered a cumulative-stress injury (i.e., carpal tunnel syndrome) in the course of her employment with the employer and awarding her permanent-partial-disability benefits under the Alabama Workers’ Compensation Act, § 25-5-1 et seq., Ala. Code 1975 (“the Act”). Because the trial court correctly determined that benefits pursuant to the Act were due to be awarded, but erred in failing to award benefits based upon the schedule of injuries in the Act (see § 25-5-57), we affirm in part, reverse in part, and remand.
The employee brought an action in the trial court against the employer in February 2005, alleging that she had suffered various injuries while in the course of her employment. The employer answered the complaint, denying liability and asserting various affirmative defenses. After an ore tenus proceeding, the trial court entered a judgment determining that the employee suffered from carpal tunnel syndrome in her arms that was caused by her employment and that the employee was permanently and totally disabled as a result of that condition so as to warrant a commensurate award of benefits under the Act. In pertinent part, the trial court determined that under Keen v. Showell Farms, Inc., 668 So.2d 783, 785-786 (Ala.Civ.App.1995), “there is no determination required pursuant to § 25-5-57(a)(3) (‘Permanent Partial Disability’).” Following the denial of its postjudgment motion, the employer timely appealed to this court from the trial court’s judgment.
The record reveals the following facts. The employee is a woman in her mid-50s who has a 12th-grade education and a limited history of work outside the home, having worked as a hospital aide before beginning to work for the employer in 1989 at its Trussville poultry-processing plant in the evisceration department. The employee testified that her work for the employer had largely consisted of inspecting, gutting, and making cuts upon 2- to 4-pound chicken carcasses that traveled along a conveyor at a rate of approximately 90 per minute. In 1998, while working for the employer, the employee began to experience tingling sensations and stiffness in her fingers, hands, and arms, at which time she consulted her family physician and was given a splint to wear at night. However, the employee’s symptoms persisted and became severe, prompting her to notify her superiors at work. After a salve recommended by a company nurse had failed to alleviate what the employee stated had become “indescribable” pain, which had begun affecting the employee’s ability to sleep, the employee was referred to Dr. Ekkehard Bonatz in mid-2002, who diagnosed the employee as having bilateral carpal tunnel syndrome.
Dr. Bonatz undertook three surgeries upon the employee: carpal-tunnel-release surgery upon the right wrist in July 2002, carpal-tunnel-release surgery upon the left wrist in February 2003, and a surgery in *610 April 2003 on the employee’s right hand to alleviate “trigger-thumb” symptoms. Dr. Bonatz testified that, after those surgeries, he had observed that the employee had “much improved pain and discomfort,” an “essentially ... full range of motion[,] and no sensory deficit”; he described the employee as having reached maximum medical improvement by May 2003 as to all surgeries and as having suffered 10% impairments to her left and right “upper extremities,” which Dr. Bonatz testified included “[everything from the fingertips to the shoulder.” Dr. Bonatz opined that the primary causes of the employee’s wrist and finger conditions were her age and gender, but he also opined that the employee’s development of diabetes and her work for the employer were contributing factors. Although Dr. Bonatz in May 2003 released the employee from further care with the admonition that she should return to him if she experienced further problems, he testified in November 2005 at his deposition that the employee had not again consulted him, and the employee admitted at trial that she had not returned to Dr. Bonatz. Although there is some dispute concerning whether the employee’s work for the employer after her release from Dr. Bonatz was regular work or “light” work, it is undisputed that the employee returned to work for the employer until the employer closed its Trussville plant at the end of October 2003; since that time, she has not worked in any employment.
The employer asserts that the trial court erred in determining that the employee’s work for the employer caused or contributed to cause her carpal tunnel syndrome and trigger fingers so as to warrant an award of benefits under the Act. The employer further contends that the trial court erred in awarding benefits under the Act for a permanent and total disability (and in considering vocational evidence in making its award) because, the employer says, the employee’s injury should have been treated as a “scheduled-member” injury under the provisions of the Act pertaining to permanent partial disabilities. See § 25-5-57(a)(3). In considering those issues, we are mindful of the pertinent standard of appellate review established by our legislature in Ala.Code 1975, § 25-5 — 81(e): although our review of “the standard of proof ... and other legal issues ... shall be without a presumption of correctness,” our review of “pure findings of fact” is subject to the caveat that reversal of a judgment based upon “pure findings of fact” by a trial court should not occur if those findings are “supported by substantial evidence.”
We will first address the employer’s threshold issue regarding the compensability of the employee’s carpal tunnel syndrome and trigger-finger condition. There being no evidence of a sudden, traumatic injury to the employee’s arms in this case, the employee’s claim for benefits under the Act is properly deemed to be based upon a “gradual deterioration” or “cumulative physical stress disorder,” a class of conditions as to which the Act does not permit an award of benefits in the absence of “clear and convincing proof that those injuries arose out of and in the course of the employee’s employment,” i.e., “evidence that ... will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion.” Ala.Code 1975, § 25-5-81(c).
We conclude that the employee adduced sufficient evidence to support the trial court’s compensability determination. The employee testified to having first experienced symptoms of carpal tunnel syndrome and two trigger fingers several years after being hired by the employer to perform manual labor that required fre *611 quent repetitive movements of her hands, wrists, and arms upon chicken carcasses moving on a conveyer at a rate of 90 per minute. Furthermore, Dr. Bonatz, in his deposition testimony, opined that the employee’s work as a trimmer and a draw-hand “put repetitive stress” on her hands and wrists; he further opined, based upon his observations of and interactions with the employee, that the employee’s work “would certainly” and “did actually contribute to” the employee’s carpal tunnel syndrome and that the problems with her left ring finger and right thumb were work related. Although Dr. Bonatz identified several additional factors that may also have contributed to the employee’s arm and finger conditions, the foregoing evidence does “tend[ ] to show that the stres-sor, i.e., the repetitive nature of the [pertinent] job ... was at least a contributing cause of the injury,” International Paper Co. v. Melton, 866 So.2d 1158, 1168 (Ala.Civ.App.2003), so as to reasonably support the trial court’s determination that the employee was entitled to benefits from the employer under the Act. See Shoney’s, Inc. v. Rigsby, 971 So.2d 722, 724-25 (Ala.Civ.App.2007); see also Ex parte McInish, [Ms. 1060600, September 5, 2008] - So ,3d-, - (Ala.2008) (holding that lay and medical testimony both may be considered in determining whether the “clear and convincing” evidentiary standard has been met). To that extent, the judgment of the trial court is due to be affirmed.
However, we reach a different conclusion with respect to the correctness of the trial court’s award of benefits based upon a determination that the employee had suffered a permanent and total disability under the Act rather than an award of benefits based upon the schedule of benefits in § 25-5-57 of the Act. The employee contends that the trial court properly posed and affirmatively answered the question of whether she had suffered a permanent total disability (as opposed to a permanent partial disability). However, our recent decision in Advantage Sales of Alabama, Inc. v. Clemons, 36 So.3d 517 (Ala.Civ.App.2008), which likewise involved a judgment awarding permanent-total-disability benefits based upon a claim arising from an employee’s bilateral carpal tunnel syndrome, belies the employee’s contention. Because Advantage Sales aptly summarizes the pertinent statutory language and the applicable caselaw gloss thereupon, we quote it at length here:
“Section 25-5-57(a)(3) provides, in pertinent part:
“ ‘a. Amount and Duration of Compensation. For permanent partial disability, the compensation shall be based upon the extent of the disability. In cases included in the following schedule, the compensation shall be 66% percent of the average weekly earnings, during the number of weeks set out in the following schedule:
[[Image here]]
“ ‘24. For the loss of two arms, other than at the shoulder, 400 weeks.
“ ‘25. For the loss of two hands,
400 weeks.
[[Image here]]
“ ‘c. Concurrent Disabilities. If an employee sustains concurrent injuries resulting in concurrent disabilities, he or she shall receive compensation only for the injury which entitled him or her to the largest amount of compensation, but this paragraph shall not affect liability for the concurrent loss of more than one member for which members compensation is provided in the specific schedule.
*612 “ ‘d. Loss of Use of Member. The permanent and total loss of the use of a member shall be considered as equivalent to the loss of that member, but in such cases the compensation specified in the schedule for such injury shall be in lieu of all other compensation, except as otherwise provided herein. For permanent disability due to injury to a member resulting in less than total loss of use of the member not otherwise compensated in the schedule, compensation shall be paid at the prescribed rate during that part of the time specified in the schedule for the total loss or total loss of use of the respective member which the extent of the injury to the member bears to its total loss.’
“In Ex parte Drummond, Co., 837 So.2d 831 (Ala.2002), our supreme court addressed the application of § 25-5-57(a)(3), stating:
“ ‘In Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968), this Court established an exception that removes certain injuries from the workers’ compensation schedule. This Court held in Bell:
“ ‘ “[Although the injury itself is to only one part or member of the body, if the effect of such injury extends to other parts of the body, and produces a greater or more prolonged incapacity than that which naturally results from the specific injury, or the injury causes an abnormal and unusual incapacity ■with respect to the member, then the employee is not limited in his recovery under the [Workers’] Compensation Law to the amount allowed under the schedule for injury to the one member.”
‘“282 Ala. at 646, 213 So.2d at 811....
[[Image here]]
“ ‘... Specifically, the Bell test permitted an injury to a scheduled member to be compensated outside the schedule if the effect of the injury extends to other parts of the body and produces a greater or more prolonged incapacity than that which naturally results from the injury to the specific member.’
“837 So.2d at 833-34.
“After quoting the exception set forth in Bell, the court in Ex parte Drummond renewed its commitment to the policy underlying the Bell test. 837 So.2d at 834. Quoting 4 Lex K. Larson, Workers’ Compensation Law § 87.02 (2001), the supreme court concluded:
“ ‘ “The great majority of modern decisions agree that, if the effects of the loss of the member extend to other parts of the body and interfere with their efficiency, the schedule allowance for the lost member is not exclusive.”
“ ‘(Footnote omitted.) This language remains unchanged from the edition of the Larson treatise on which this Court relied in Bell. Because of the confusion that has developed surrounding the Bell test, we today adopt the language recited above from Larson, Workers’ Compensation Law § 87.02, as the test for determining whether an injury to a scheduled member should be treated as unscheduled; therefore, we overrule Bell insofar as it established a different test
[[Image here]]
“Ex parte Drummond, 837 So.2d at 834-35 (footnote omitted).
“In Ex parte Drummond, our supreme court recognized that its holding in Drummond was consistent with its 1969 decision in Leach Manufacturing *613 Co. v. Puckett, 284 Ala. 209, 224 So.2d 242 (1969), wherein the court held:
“ ‘[W]here there is an injury resulting in the loss of a member, or the loss of the use of a member, so as to invoke payment of compensation as provided [by the Workers’ Compensation Act], and where this is not accompanied by other physical disability (of the body), the payment of the specified sum is intended to fully compensate the injured employee for the injury sustained.’
“Puckett, 284 Ala. at 214, 224 So.2d at 247.
“In its October 16, 2007, judgment, the trial court concluded that Clemons was permanently and totally disabled. Based on that conclusion, the trial court, citing dicta in Werner Co. v. Williams, 871 So.2d 845 (Ala.Civ.App.2003), found that it did not have to determine whether the injury was scheduled or nonscheduled because, it reasoned, § 25-5-57(a)(3)a. only applies to permanent partial disabilities. The trial court concluded that Clemons was permanently and totally disabled without regard for whether the Drummond test had been satisfied.
“The trial court’s reliance on dicta in Werner Co. v. Williams, supra, is misplaced. Our supreme court’s decisions in Puckett and Drummond dictate that the trial court must first determine whether the permanent injury to the scheduled member extends to and interferes with other nonscheduled parts of the employee’s body. If the injury to the scheduled member does not extend to other parts of the employee’s body, then the injury is classified as a matter of law as a permanent partial disability and the schedule set forth in § 25-5-57(a)(3) governs the amount of compensation due the employee without consideration of any vocational disability. Swift Lumber, Inc. v. Ramer, 875 So.2d 1200, 1205 (Ala.Civ.App.2003). If the evidence does meet the Drummond exception, the employee may present evidence of a vocational disability so as to recover benefits under either § 25-5-57(a)(3)(g) (governing compensation for nonscheduled permanent partial disability) or § 25-5-57(a)(4)a. (governing compensation for permanent total disability).”
36 So.3d at 526-28 (emphasis added); see also Ex parte Baggett, 1 So.3d 1021, 1022 (Ala.2008) (Murdock, J., concurring specially) (only if injury is not compensable under the schedule should the trial court then proceed to consider the degree of disability to the body as a whole; proceeding in reverse order “would negate the intended operation of the schedule”). To the extent that Keen v. Showell Farms, Inc., relied upon by the trial court in its judgment and by the employee on appeal, would indicate a contrary procedure, it has been implicitly overruled by Advantage Sales.
We thus first consider, as the trial court should have first considered, whether the schedule applies or whether an exception to the schedule applies. The employee, in defense of the trial court’s judgment that the schedule does not apply, does not contend on appeal that the permanent injury to her arms extends to and interferes with other, nonscheduled parts of her body so as to fit within the first prong of the test in Bell v. Driskill, 282 Ala. 640, 213 So.2d 806 (1968). Rather, she claims that she has satisfied the second prong of the Bell test asserting that her injury “causes an abnormal and unusual incapacity with respect to the member” itself. As Advantage Sales points out, however, the scope of the second prong of Bell has been severely limited, if not abrogated completely, by Ex *614 parte Drummond Co., 837 So.2d 831 (Ala.2002), and subsequent appellate opinions; at most, a vestigial exception may apply to situations “ ‘when an injury ... to a scheduled member[ ] entails ... a debilitating pain ... that impairs the body as a whole in a manner not contemplated by the schedule.’ ” Shoney’s, Inc. v. Rigsby, 971 So.2d 722, 725-26 n. 2 (Ala.Civ.App.2007) (quoting Masterbrand Cabinets, Inc. v. Johnson, 984 So.2d 1136, 1144 (Ala.Civ.App.2005), aff'd, 984 So.2d 1146 (Ala.2007)). However, for that exception to the schedule to apply, “ ‘the pain associated with ... a permanently injured member’ ” must, “ ‘even when the worker avoids the use of that member’ ” as much as would be reasonable, be “ ‘sufficiently abnormal in its frequency or continuity and in its severity’ ” so as to impair the body in a manner beyond that contemplated by the schedule. Shoney’s, 971 So.2d at 727 (quoting Masterbrand, 984 So.2d at 1144-45).
The employee, during her testimony at trial, complained that she was experiencing severe pain in her right wrist (rating it 8 out of a subjective 10-point scale) and more moderate pain in her left arm (rated 7 out of a subjective 10-point scale) that could be alleviated by massage. She testified that she took an over-the-counter brand of naproxen for her pain “every other day” on an off-and-on basis, but she had not taken any other analgesics or any prescription pain drugs. She also testified that her pain no longer awakened her at night, but tended to increase upon use of her hands and arms, and admitted that she had not returned to Dr. Bonatz for further consultation regarding her pain symptoms since 2003.
In General Electric Co. v. Baggett, 1 So.3d 1015 (Ala.Civ.App.2007), cert. denied, Ex parte Baggett, 1 So.3d 1021 (Ala.2008), this court reversed a judgment awarding permanent-total-disability benefits under the Act to a worker who had suffered torn left-knee cartilage while loading refrigerators onto a railroad car. The evidence in that case indicated that after the worker had reached maximum medical improvement, the worker continued to suffer from pain in his left knee that he rated at between 7 and 9 on a 10-point severity scale; however, the worker testified that he used only a prescription anti-inflammatory medication daily and that he soaked his body in a tub with alcohol and Epsom salts in an effort to relieve his pain and swelling. In reversing the trial court’s judgment in Baggett, we concluded that the record did not contain substantial evidence indicating that the worker “experience[d] debilitating pain that, by itself, cause[d] a disability to the body as a whole,” i.e., the record did not indicate that he “experienced] more severe pain from his left-leg injury than would normally be associated with an injury of this nature, an injury listed in the schedule.” 1 So.3d at 1020.
Like the worker whose claim was considered in Baggett, the employee in this case has described having experienced moderate to severe pain as a consequence of a workplace injury to a scheduled member. However, as in Baggett, we are not confronted with a situation in which a workers’ compensation claimant has suffered from abnormally severe pain stemming from an injury to a scheduled member that would render the injury compensable outside the schedule under any vestigial exception to scheduled-member compensation for scheduled-member injuries that may properly be said to exist under Drummond and its progeny. The employee in this case has not sought, or been prescribed, any pain medication beyond an occasional over-the-counter analgesic remedy, and her symptoms are admittedly alleviated to some degree by massage and avoidance of use. *615 We thus conclude that the trial court erred in awarding benefits to the employee outside the schedule in this case and, derivatively, in considering evidence of the employee’s vocational disability. See Gulf States Paper Corp. v. Warren, 979 So.2d 98, 104 (Ala.Civ.App.2007) (“Because the employee’s recovery was limited to compensation for a scheduled injury, evidence concerning the employee’s vocational disability was irrelevant.”).
Based upon the foregoing facts and authorities, we affirm the judgment of the trial court insofar as that court determined that the employee suffered a compensable injury under the Act. Insofar as that court determined that the employee was entitled to benefits outside the schedule of injuries in the Act, that court’s judgment is due to be reversed and the cause remanded for entry of a judgment consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS, J., concur.
MOORE, J., concurs in part and concurs in the result, with writing.
BRYAN, J., concurs in the result, with writing.